Sue Ann WATTS (Evans), Plaintiff-Appellant,

v.

James E. WATTS, Defendant-Respondent.

Supreme Court

*No. 85-0451. Argued February 6, 1987.—Decided May 11, 1987.*

(Also reported in 405 N.W.2d 305.)

507

For the plaintiff-appellant there was an appellant's brief (in the court of appeals) by *David G. Walsh, Margaret A. Satterthwaite,* and *Walsh, Walsh, Sweeney and Whitney, S.C.,* Madison, and a reply brief by *David G. Walsh.* The cause was argued by *David G. Walsh.*

For the defendant-respondent there was a brief (in the court of appeals) and oral argument by *Daniel G. Sandell,* Madison.

SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment of the circuit court for Dane County, William D. Byrne, Judge, dismissing Sue Ann Watts' amended complaint, pursuant to sec.

802.06(2)(f), Stats. 1985–86, for failure to state a claim upon which relief may be granted. This court took jurisdiction of the appeal upon certification by the court of appeals under sec. (Rule) 809.61, Stats. 1985–86. For the reasons set forth, we hold that the complaint states a claim upon which relief may be granted. Accordingly, we reverse the judgment of the circuit court and remand the cause to the circuit court for further proceedings consistent with this opinion.

The case involves a dispute between Sue Ann Evans Watts, the plaintiff, and James Watts, the defendant, over their respective interests in property accumulated during their nonmarital cohabitation relationship which spanned 12 years and produced two children. The case presents an issue of first impression and comes to this court at the pleading stage of the case, before trial and before the facts have been determined.

The plaintiff asked the circuit court to order an accounting of the defendant's personal and business assets accumulated between June 1969 through December 1981 (the duration of the parties' cohabitation) and to determine plaintiff's share of this property. The circuit court's dismissal of plaintiff's amended complaint is the subject of this appeal. The plaintiff rests her claim for an accounting and a share in the accumulated property on the following legal theories: (1) she is entitled to an equitable division of property under sec. 767.255, Stats. 1985–86; (2) the defendant is estopped to assert as a defense to plaintiff's claim under sec. 767.255, that the parties are not married; (3) the plaintiff is entitled to damages for defendant's breach of an express contract or an implied-in-fact contract between the parties; (4) the defendant holds the accumulated property under a constructive trust

based upon unjust enrichment; and (5) the plaintiff is entitled to partition of the parties' real and personal property pursuant to the partition statutes, secs. 820.01 and 842.02(1), 1985–86, and common law principles of partition.[1]

The circuit court dismissed the amended complaint, concluding that sec. 767.255, Stats. 1985–86, authorizing a court to divide property, does not apply to the division of property between unmarried persons. Without analyzing the four other legal theories upon which the plaintiff rests her claim, the circuit court simply concluded that the legislature, not the court, should provide relief to parties who have accumulated property in nonmarital cohabitation relationships. The circuit court gave no further explanation for its decision.

We agree with the circuit court that the legislature did not intend sec. 767.255 to apply to an unmarried couple. We disagree with the circuit court's implicit conclusion that courts cannot or should not, without express authorization from the legislature, divide property between persons who have engaged in nonmarital cohabitation. Courts traditionally have settled contract and property disputes between unmarried persons, some of whom have cohabited. Nonmarital cohabitation does not render every agreement between the cohabiting parties illegal and does not automatically preclude one of the parties from seeking judicial relief, such as statutory or common law partition, damages for breach of express or

---

[1]The complaint also includes five tort claims based on allegations regarding the defendant's conduct after the termination of their relationship. The parties stipulated to the dismissal of the tort claims and they are not the subject of the appeals.

implied contract, constructive trust and quantum merit where the party alleges, and later proves, facts supporting the legal theory. The issue for the court in each case is whether the complaining party has set forth any legally cognizable claim.

A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the complaint. All facts pleaded and all reasonable inferences therefrom are admitted as true, but only for the purpose of testing the legal sufficiency of the claim, not for trial. *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 669, 292 N.W.2d 816, 18 A.L.R.4th 829 (1980). A complaint should not be dismissed for failure to state a claim unless it appears certain that no relief can be granted under any set of facts that a plaintiff can prove in support of his or her allegations. *Kranzush v. Badger State Mutual Cas. Co.,* 103 Wis. 2d 56, 82, 307 N.W.2d 256 (1981). The pleadings are to be liberally construed to do substantial justice to the parties. Sec. 802.02(6), Stats. 1985–86; *Scarpaci, supra,* 96 Wis. 2d at 669. Whether a complaint states a claim upon which relief may be granted is a question of law and this court need not defer to the circuit court's determination.

We test the sufficiency of the plaintiff's amended complaint by first setting forth the facts asserted in the complaint and then analyzing each of the five legal theories upon which the plaintiff rests her claim for relief.

I.

The plaintiff commenced this action in 1982. The plaintiff's amended complaint alleges the following

facts, which for purposes of this appeal must be accepted as true. The plaintiff and the defendant met in 1967, when she was 19 years old, was living with her parents and was working full time as a nurse's aide in preparation for a nursing career. Shortly after the parties met, the defendant persuaded the plaintiff to move into an apartment paid for by him and to quit her job. According to the amended complaint, the defendant "indicated" to the plaintiff that he would provide for her.

Early in 1969, the parties began living together in a "marriage-like" relationship, holding themselves out to the public as husband and wife. The plaintiff assumed the defendant's surname as her own. Subsequently, she gave birth to two children who were also given the defendant's surname. The parties filed joint income tax returns and maintained joint bank accounts asserting that they were husband and wife. The defendant insured the plaintiff as his wife on his medical insurance policy. He also took out a life insurance policy on her as his wife, naming himself as the beneficiary. The parties purchased real and personal property as husband and wife. The plaintiff executed documents and obligated herself on promissory notes to lending institutions as the defendant's wife.

During their relationship, the plaintiff contributed childcare and homemaking services, including cleaning, cooking, laundering, shopping, running errands, and maintaining the grounds surrounding the parties' home. Additionally, the plaintiff contributed personal property to the relationship which she owned at the beginning of the relationship or acquired through gifts or purchases during the relationship. She served as hostess for the defendant for social and

business-related events. The amended complaint further asserts that periodically, between 1969 and 1975, the plaintiff cooked and cleaned for the defendant and his employees while his business, a landscaping service, was building and landscaping a golf course.

From 1973 to 1976, the plaintiff worked 20–25 hours per week at the defendant's office, performing duties as a receptionist, typist, and assistant bookkeeper. From 1976 to 1981, the plaintiff worked 40–60 hours per week at a business she started with the defendant's sister-in-law, then continued and managed herself after the dissolution of that partnership. The plaintiff further alleges that in 1981 the defendant made their relationship so intolerable that she was forced to move from their home and their relationship was irretrievably broken. Subsequently, the defendant barred the plaintiff from returning to her business.

The plaintiff alleges that during the parties' relationship, and because of her domestic and business contributions, the business and personal wealth of the couple increased. Furthermore, the plaintiff alleges that she never received any compensation for these contributions to the relationship and that the defendant indicated to the plaintiff both orally and through his conduct that he considered her to be his wife and that she would share equally in the increased wealth.

The plaintiff asserts that since the breakdown of the relationship the defendant has refused to share equally with her the wealth accumulated through their joint efforts or to compensate her in any way for her contributions to the relationship.

## II.

The plaintiff's first legal theory to support her claim against the property accumulated during the

cohabitation is that the plaintiff, defendant, and their children constitute a "family," thus entitling the plaintiff to bring an action for property division under sec. 767.02(1)(h), Stats. 1985–86,[2] and to have the court "divide the property of the parties and divest and transfer the title of any such property" pursuant to sec. 767.255, 1985–86.[3]

The plaintiff asserts that the legislature intended secs. 767.02(1)(h) and 767.255, which usually govern division of property between married persons in divorce or legal separation proceedings, to govern a property division action between unmarried cohabitants who constitute a family. The plaintiff points out that secs. 767.02(1)(h) and 767.255 are part of chapter 767, which is entitled "Actions Affecting the Family," and that in 1979 the legislature deliberately changed the title of the chapter from "Actions Affecting Marriage" to "Actions Affecting the Family."[4] The

---

[2]Sec. 767.02(1)(h), Stats. 1985–86, provides that "Actions affecting the family are: ... (h) For property division."

[3]Sec. 767.255, Stats. 1985–86, provides in relevant part:

"Upon every judgment of annulment, divorce or legal separation, *or in rendering a judgment in an action under s. 767.02(1)(h),* the court shall divide the property of the parties and divest and transfer the title of any such property accordingly." (Emphasis supplied.)

[4]Laws of 1979, ch. 352, sec. 19.

In a supplemental submission, and at oral argument, the plaintiff analogized its interpretation of sec. 767.255 to this court's adoption of a broad definition of "family" in the context of zoning and land use. *See, e.g. Crowley v. Knapp,* 94 Wis. 2d 421, 437, 288 N.W.2d 815 (1980), in which this court stated that a "family" in that context "may mean a group of people who live, sleep, cook, and eat upon the premises as a single housekeeping unit." In

legislature has failed to provide any definition for "family" under ch. 767, or for that matter under any chapter of the Family Code.[5]

The plaintiff relies on *Warden v. Warden,* 36 Wash. App. 693, 676 P.2d 1037 (1984), to support her claim for relief under secs. 767.02(1)(h) and 767.255. In *Warden,* the Washington court of appeals held that the statute providing guidelines for property division upon dissolution of marriage, legal separation, etc., could also be applied to divide property acquired by unmarried cohabitants in what was "tantamount to a marital family except for a legal marriage." *Warden,* 36 Wash. App. at 698, 676 P.2d at 1039. *Warden* is remarkably similar on its facts to the instant case. The parties in *Warden* had lived together for 11 years, had two children, held themselves out as husband and wife, acquired property together, and filed joint tax returns. On those facts, the Washington court of appeals held that the trial court correctly treated the parties as a "family" within the meaning of the Washington marriage dissolution statute. In addition, the trial court had considered such statutory factors as the length and purpose of the parties' relationship, their two children, and the contributions and future

---

*Crowley,* the court adopted a definition of "family" serving that public policy favoring the free and unrestricted use of property.

By contrast, the plaintiff here has failed to convince us that extending the definition of "family" in this case to include unmarried cohabitants will further in any way the expressed public policy of ch. 767 to promote marriage and the family.

[5]The "Family Code" is comprised of ch. 765, Marriage; ch. 766, Marital Property; ch. 767, Actions Affecting the Family; and ch. 768, Actions Abolished.

prospects of each in determining their respective shares of the property.

Although the *Warden* case provides support for the plaintiff's argument, most courts which have addressed the issue of whether marriage dissolution statutes provide relief to unmarried cohabitants have either rejected or avoided application of a marriage dissolution statute to unmarried cohabitants. *See, e.g., Marvin v. Marvin,* 18 Cal. 3d 660, 681, 134 Cal. Rptr. 815, 557 P.2d 106 (1976); *Metten v. Benge,* 366 N.W.2d 577, 579–80 (Iowa 1985); *Glasgo v. Glasgo,* 410 N.E.2d 1325, 1331 (Ind. Ct. App. 1980); *Kozlowski v. Kozlowski,* 80 N.J. 378, 383, 403 A.2d 902, 905 (1979).[6]

The purpose of statutory construction is to ascertain the intent of the legislature and give effect to that intent. If the language of the statute is unclear, the court will endeavor to discover the legislature's intent as disclosed by the scope, history, context, subject matter and purpose of the statute. *Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 538, 345 N.W.2d 389 (1984).

While we agree with the plaintiff that some provisions in ch. 767 govern a mother, father, and their children, regardless of marriage,[7] upon our analysis of sec. 767.255 and the Family Code, we

---

[6]For a discussion of whether cohabitation should be viewed as analogous to marriage, *see* Fineman, *Law and Changing Patterns of Behavior: Sanctions on Non-Marital Cohabitation,* 1981 Wis. L. Rev. 275, 316–32.

[7]The plaintiff correctly points out that ch. 767 includes actions for determining paternity, which are not dependent upon the marital status of the parents. *See,* secs. 767.45–767.53, Stats. 1985–86.

conclude that the legislature did not intend sec. 767.255 to extend to unmarried cohabitants.

When the legislature added what is now sec. 767.255 in 1977 as part of the no fault divorce bill, it stated that its "sole purpose" was "to promote an equitable and reasonable adjudication of the economic and custodial issues involved in *marriage* relationships."[8] (Emphasis supplied.) Moreover, the unambiguous language of sec. 767.255 and the criteria for property division listed in sec. 767.255 plainly contemplate that the parties who are governed by that section are or have been married.[9] Finally, secs. 767.02(1)(h) and 767.255 were both in existence before the 1979 legislature changed the title of ch. 767 from "Marriage" to "Family." A change in the title of the chapter would not change the import of these statutory provisions.

Furthermore, the Family Code emphasizes marriage. The entire Family Code, of which ch. 767 is an integral part, is governed generally by the provisions of sec. 765.001(2), which states in part that "[i]t is the intent of chs. 765 to 768 to promote the stability and

---

[8] 1977 Wis. Laws ch. 105, sec. 1(4).

[9] Some of the criteria listed under sec. 767.255, Stats. (1985–86), are as follows:

"(1) The length of the *marriage*.

"(2) The property brought to the *marriage* by each party.

. . .

"(3) The contribution of each party to the *marriage,* giving appropriate economic value to each party's contribution in homemaking and child care services.

. . .

"(11) Any written agreement made by the parties before or during the *marriage* concerning any arrangement for property distribution; ..." (Emphasis supplied.)

best interests of *marriage and the family. . . . Marriage* is the institution that *is the foundation of family and of society.* Its stability is basic to morality and civilization, and of vital interest to society and the state." (Emphasis supplied.) Section 765.001(3) further states that "[c]hapters 765 to 768 shall be liberally construed to effect the objectives of sub. (2)." The conclusion is almost inescapable from this language in sec. 765.001 (2), (3) that the legislature not only intended chs. 765–768 to protect and promote the "family," but also intended "family" to be within the "marriage" context.[10]

The statutory prohibition of marriages which do not conform to statutory requirements, sec. 765.21, Stats. 1985–86,[11] further suggests that the legislature intended that the Family Code applies, for the most part, to those couples who have been joined in marriage according to law.

On the basis of our analysis of sec. 767.255 and the Family Code which revealed no clear evidence that the legislature intended sec. 767.255 to apply to

[10]When the legislature abolished criminal sanctions for cohabitation in 1983, it nevertheless added a section to the criminal code stating that while the state does not regulate private sexual activity of consenting adults, the state does not condone or encourage sexual conduct outside the institution of marriage. The legislature adopted the language of sec. 765.001 that "[m]arriage is the foundation of family and society. Its stability is basic to morality and civilization, and of vital interest to society and this state." Sec. 944.01, Stats. 1985–86.

[11]Common law marriages were abolished in 1917. Laws of 1917, ch. 218, sec. 21. Sec. 765.21, Stats. 1985–86, provides that marriages contracted in violation of specified provisions of ch. 765 are void.

519

unmarried persons, we decline the invitation to extend the application of sec. 767.255 to unmarried cohabitants. We therefore hold that the plaintiff has not stated a claim for property division under sec. 767.255.

### III.

The plaintiff urges that the defendant, as a result of his own words and conduct, be estopped from asserting the lack of a legal marriage as a defense against the plaintiff's claim for property division under sec. 767.255. As support for her position, the plaintiff cites a 1905 Tennessee case and two law review articles that do no more than cite to the Tennessee case law.[12]

Although the defendant has not discussed this legal theory, we conclude that the doctrine of "marriage by estoppel" should not be applied in this case. We reach this result primarily because we have already concluded that the legislature did not intend sec. 767.255 to govern property division between unmarried cohabitants.[13] We do not think the parties'

---

[12]Plaintiff cites to *Smith v. North Memphis Savings Bank,* 89 S.W. 392 (Tenn. 1905), which is one of the more "recent" in a series of Tennessee cases to apply "marriage by estoppel." The plaintiff also cites Comment, *Property Rights Upon Termination of Unmarried Cohabitation: Marvin v. Marvin,* 90 Harv. L. Rev. 1708, 1711–12 (1977); and Weyrauch, *Informal and Formal Marriage— An Appraisal of Trends in Family Organization,* 28 U. Chi. L. Rev. 88, 105 (1960). Weyrauch cites to Tennessee law, and the comment cites to Weyrauch.

[13]This court has previously rejected application of the "marriage by estoppel" doctrine in certain cases. In *Eliot v. Eliot,* 81 Wis. 295, 299, 51 N.W. 81, 82, 15 L.R.A. 259 (1892), a man was held

conduct should place them within the ambit of a statute which the legislature did not intend to govern them.

## IV.

The plaintiff's third legal theory on which her claim rests is that she and the defendant had a contract to share equally the property accumulated during their relationship. The essence of the complaint is that the parties had a contract, either an express or implied in fact contract, which the defendant breached.

Wisconsin courts have long recognized the importance of freedom of contract and have endeavored to protect the right to contract. A contract will not be enforced, however, if it violates public policy. A declaration that the contract is against public policy should be made only after a careful balancing, in the light of all the circumstances, of the interest in enforcing a particular promise against the policy against enforcement. Courts should be reluctant to frustrate a party's reasonable expectations without a corresponding benefit to be gained in deterring "misconduct" or avoiding inappropriate use of the judicial system. *Merten v. Nathan,* 108 Wis. 2d 205, 211, 321 N.W.2d 173, 177 (1982); *Continental Ins. Co. v. Daily Express, Inc.,* 68 Wis. 2d 581, 589, 229 N.W.2d 617 (1975); *Schaal v. Great Lakes Mutual Fire & Marine Ins. Co.,* 6 Wis. 2d 350, 356, 94 N.W.2d 646, 649 (1959); *Trumpf v. Shoudy,* 166 Wis. 353, 359, 164 N.W. 454,

---

not estopped from pleading that he was under age to be married in an annulment action he brought, even though he fraudulently induced the defendant into marriage. *Accord Swenson v. Swenson,* 179 Wis. 536, 540–41, 192 N.W. 70, 72 (1923).

521

456 (1917); Restatement (Second) of Contracts sec. 178 comments b and e (1981).

The defendant appears to attack the plaintiff's contract theory on three grounds. First, the defendant apparently asserts that the court's recognition of plaintiff's contract claim for a share of the parties' property contravenes the Wisconsin Family Code. Second, the defendant asserts that the legislature, not the courts, should determine the property and contract rights of unmarried cohabiting parties. Third, the defendant intimates that the parties' relationship was immoral and illegal and that any recognition of a contract between the parties or plaintiff's claim for a share of the property accumulated during the cohabitation contravenes public policy.

The defendant rests his argument that judicial recognition of a contract between unmarried cohabitants for property division violates the Wisconsin Family Code on *Hewitt v. Hewitt,* 77 Ill. 2d 49, 31 Ill. Dec. 827, 394 N.E.2d 1204, 3 A.L.R.4th 1 (1979). In *Hewitt* the Illinois Supreme Court concluded that judicial recognition of mutual property rights between unmarried cohabitants would violate the policy of the Illinois Marriage and Dissolution Act because enhancing the attractiveness of a private arrangement contravenes the Act's policy of stengthening and preserving the integrity of marriage. The Illinois court concluded that allowing such a contract claim would weaken the sanctity of marriage, put in doubt the rights of inheritance, and open the door to false pretenses of marriage. *Hewitt,* 77 Ill. 2d at 65, 394 N.E.2d at 1211.

We agree with Professor Prince and other commentators that the *Hewitt* court made an unsupportable inferential leap when it found that cohabitation

agreements run contrary to statutory policy and that the *Hewitt* court's approach is patently inconsistent with the principle that public policy limits are to be narrowly and exactly applied.[14]

Furthermore, the Illinois statutes upon which the Illinois supreme court rested its decision are distinguishable from the Wisconsin statutes. The Illinois supreme court relied on the fact that Illinois still retained "fault" divorce and that cohabitation was unlawful. By contrast, Wisconsin abolished "fault" in divorce in 1977 and abolished criminal sanctions for nonmarital cohabitation in 1983.[15]

The defendant has failed to persuade this court that enforcing an express or implied in fact contract between these parties would in fact violate the Wisconsin Family Code. The Family Code, chs. 765–768, Stats. 1985–86, is intended to promote the institution of marriage and the family. We find no indication, however, that the Wisconsin legislature intended the Family Code to restrict in any way a court's resolution

[14]Prince, *Public Policy Limitations in Cohabitation Agreements: Unruly Horse or Circus Pony,* 70 Minn. L. Rev. 163, 189–205 (1985).

[15]Both Illinois and Wisconsin have abolished common law marriages. In our view this abolition does not invalidate a private cohabitation contract. Cohabitation agreements differ in effect from common law marriage. There is a significant difference between the consequences of achieving common law marriage status and of having an enforceable cohabitation agreement.

In *Latham v. Latham,* 274 Or. 421, 426–27, 547 P.2d 144, 147 (1976), the Oregon supreme court found that the Legislature's decriminalization of cohabitation represented strong evidence that enforcing agreements made by parties during cohabitation relationships would not be contrary to Oregon public policy.

523

of property or contract disputes between unmarried cohabitants.

The defendant also urges that if the court is not willing to say that the Family Code proscribes contracts between unmarried cohabiting parties, then the court should refuse to resolve the contract and property rights of unmarried cohabitants without legislative guidance. The defendant asserts that this court should conclude, as the *Hewitt* court did, that the task of determining the rights of cohabiting parties is too complex and difficult for the court and should be left to the legislature. We are not persuaded by the defendant's argument. Courts have traditionally developed principles of contract and property law through the case-by-case method of the common law. While ultimately the legislature may resolve the problems raised by unmarried cohabiting parties, we are not persuaded that the court should refrain from resolving such disputes until the legislature gives us direction.[16] Our survey of the cases in other jurisdictions reveals that *Hewitt* is not widely followed.

We turn to the defendant's third point, namely, that any contract between the parties regarding property division contravenes public policy because the contract is based on immoral or illegal sexual activity. The defendant does not appear to make this

---

[16]We have previously acted in the absence of express legislative direction. *See Estate of Fox,* 178 Wis. 369, 190 N.W. 90 (1922), in which the court allowed relief under the doctrine of unjust enrichment to a woman who in good faith believed that she was married when she actually was not, discussed *infra. See also Smith v. Smith,* 255 Wis. 96, 38 N.W.2d 12 (1949), in which the court refused equitable property division to one party to an illegal common law marriage, discussed *infra;* and *Steffes.*

argument directly. It is not well developed in the brief, and at oral argument defendant's attorney indicated that he did not find this argument persuasive in light of the current community mores, the substantial number of unmarried people who cohabit, and the legislature's abolition of criminal sanctions for cohabitation. Although the parties in the instant case cohabited at a time when cohabitation was illegal, the defendant's counsel at oral argument thought that the present law should govern this aspect of the case. Because illegal sexual activity has posed a problem for courts in contract actions, we discuss this issue even though the defendant did not emphasize it.

Courts have generally refused to enforce contracts for which the sole consideration is sexual relations, sometimes referred to as "meretricious" relationships. *See In Matter of Estate of Steffes,* 95 Wis. 2d 490, 514, 290 N.W.2d 697 (1980), *citing* Restatement of Contracts sec. 589 (1932). Courts distinguish, however, between contracts that are explicitly and inseparably founded on sexual services and those that are not. This court, and numerous other courts,[17] have concluded that "a bargain between two people is not illegal merely because there is an illicit relationship between the two so long as the bargain is independent of the illicit relationship and the illicit relationship does not constitute any part of the consideration bargained for and is not a condition of the bargain." *Steffes, supra,* 95 Wis. 2d at 514.

---

[17]*See, e.g., Glasgo v. Glasgo,* 410 N.E.2d 1325, 1331 (Ind. App. 1980); *Tyranski v. Piggins,* 44 Mich. App. 570, 573–74, 205 N.W.2d 595, 598–99 (1973); *Kozlowski v. Kozlowski,* 80 N.J. 378, 387, 403 A.2d 902, 907 (1979); *Latham v. Latham,* 274 Or. 421, 426–27, 547 P.2d 144, 147 (Or. 1976); *Marvin v. Marvin,* 18 Cal. 3d 660, 670–71, 134 Cal. Rptr. 815, 822, 557 P.2d 106, 113 (1976).

While not condoning the illicit sexual relationship of the parties, many courts have recognized that the result of a court's refusal to enforce contract and property rights between unmarried cohabitants is that one party keeps all or most of the assets accumulated during the relationship, while the other party, no more or less "guilty," is deprived of property which he or she has helped to accumulate. *See e.g., Glasgo v. Glasgo,* 410 N.E.2d 1325, 1330 (Ind. App. 1980); *Latham v. Latham,* 274 Or. 421, 426, 547 P.2d 144 (Or. 1976); *Marvin v. Marvin, supra,* 18 Cal. 3d at 682, 134 Cal. Rptr at 830, 557 P.2d at 121; *West v. Knowles,* 50 Wash. 2d 311, 315–16, 311 P.2d 689 (1957).

The *Hewitt* decision, which leaves one party to the relationship enriched at the expense of the other party who had contributed to the acquisition of the property, has often been criticized by courts and commentators as being unduly harsh.[18] Moreover, courts recognize that their refusal to enforce what are in other contexts clearly lawful promises will not undo the parties' relationship and may not discourage others from entering into such relationships. *Tyranski v. Piggins,* 44 Mich. App. 570, 577, 205 N.W.2d 595 (1973). A harsh, *per se* rule that the contract and property rights of unmarried cohabiting parties will not be recognized might actually encourage a partner with greater income potential to avoid marriage in order to retain all accumulated assets, leaving the other party with nothing. *See Marvin v. Marvin,*

---

[18]*See* Prince, *Public Policy Limitations on Cohabitation Agreements: Unruly Horse or Circus Pony,* 70 Minn. L. Rev. 163, 189–205 (1985); Oldham & Caudill, *A Reconnaissance of Public Policy Restrictions upon Enforcement of Contracts between Cohabitants,* 18 Fam. L.Q. 93, 132 (Spring 1984); Comment, *Marvin v. Marvin: Five Years Later,* 65 Marq. L. Rev. 389, 414 (1982).

*supra,* 18 Cal. 3d at 683, 134 Cal. Rptr. at 831, 557 P.2d at 122.

One Wisconsin case which requires discussion in this context is *Smith v. Smith,* 255 Wis. 96, 38 N.W.2d 12, 14 A.L.R.2d 914 (1949). In *Smith,* one of the parties to a common law marriage discovered that such marriages were not legal, demanded that the defendant marry her, was refused, and sought equitable property division. The court denied her claim. Although we find the harsh result in *Smith* troubling, we need not overrule it because *Smith* is distinguishable from the instant case.

The plaintiff in *Smith* was seeking equitable property division under the marriage dissolution statutes. Like the court in *Smith,* we have decided that those statutes are unavailable to an unmarried person. The plaintiff in this case, however, rests her claim on theories of recovery other than those of the plaintiff in *Smith.* The *Smith* court ruled that the plaintiff had based her claim for property division solely on the fact of the couple's illegal common law marriage. *Smith, supra,* 255 Wis. at 100. In other words, the plaintiff in that case had not alleged facts necessary to find that the couple had agreed to share their property, independent from their sexual relationship. *Id.*

In *Smith,* the problem was inadequate pleading by the plaintiff. In this case, the plaintiff has alleged many facts independent from the parties' physical relationship which, if proven, would establish an express contract or an implied in fact contract that the parties agreed to share the property accumulated during the relationship.

The plaintiff has alleged that she quit her job and abandoned her career training upon the defendant's promise to take care of her. A change in one party's circumstances in performance of the agreement may imply an agreement between the parties. *Steffes, supra,* 95 Wis. 2d at 504; *Tyranski, supra,* 44 Mich. App. at 574, 205 N.W.2d at 597.

In addition, the plaintiff alleges that she performed housekeeping, childbearing, childrearing, and other services related to the maintenance of the parties' home, in addition to various services for the defendant's business and her own business, for which she received no compensation. Courts have recognized that money, property, or services (including housekeeping or childrearing) may constitute adequate consideration independent of the parties' sexual relationship to support an agreement to share or transfer property. *See Tyranski, supra,* 44 Mich. App. at 574, 205 N.W.2d at 597; *Carlson v. Olson,* 256 N.W.2d 249, 253–254 (Minn. 1977); *Carroll v. Lee,* 148 Ariz. 10, 14, 712 P.2d 923, 927 (1986); Steffes, *supra* 95 Wis. 2d at 501.[19]

---

[19]Until recently, the prevailing view was that services performed in the context of a "family or marriage relationship" were presumed gratuitous. However, that presumption was rebuttable. See *Steffes,* 95 Wis. 2d at 501, 290 N.W.2d at 703–704. In *Steffes,* we held the presumption to be irrelevant where the plaintiff can show either an express or implied agreement to pay for those services, even where the plaintiff has rendered them "with a sense of affection, devotion and duty." *Id.* 95 Wis. 2d at 503, 290 N.W.2d at 703–704. For a discussion of the evolution of thought regarding the economic value of homemaking service by cohabitants, *see* Bruch, *Property Rights of De Facto Spouses Including Thoughts on the Value of Homemakers' Services,* 10 Fam. L.Q. 101, 110–14 (Summer 1976).

According to the plaintiff's complaint, the parties cohabited for more than twelve years, held joint bank accounts, made joint purchases, filed joint income tax returns, and were listed as husband and wife on other legal documents. Courts have held that such a relationship and "joint acts of a financial nature can give rise to an inference that the parties intended to share equally." *Beal v. Beal,* 282 Or. 115, 122, 577 P.2d 507, 510 (1978). The joint ownership of property and the filing of joint income tax returns strongly implies that the parties intended their relationship to be in the nature of a joint enterprise, financially as well as personally. *See Beal,* 282 Or. at 122, 577 P.2d at 510; *Warden v. Warden, supra,* 36 Wash. App. at 696–97, 676 P.2d at 1038.

Having reviewed the complaint and surveyed the law in this and other jurisdictions, we hold that the Family Code does not preclude an unmarried cohabitant from asserting contract and property claims against the other party to the cohabitation. We further conclude that public policy does not necessarily preclude an unmarried cohabitant from asserting a contract claim against the other party to the cohabitation so long as the claim exists independently of the sexual relationship and is supported by separate consideration. Accordingly, we conclude that the plaintiff in this case has pleaded the facts necessary to state a claim for damages resulting from the defendant's breach of an express or an implied in fact contract to share with the plaintiff the property accumulated through the efforts of both parties during their relationship. Once again, we do not judge the merits of the plaintiff's claim; we merely hold that she be given her day in court to prove her claim.

## V.

The plaintiff's fourth theory of recovery involves unjust enrichment. Essentially, she alleges that the defendant accepted and retained the benefit of services she provided knowing that she expected to share equally in the wealth accumulated during their relationship. She argues that it is unfair for the defendant to retain all the assets they accumulated under these circumstances and that a constructive trust should be imposed on the property as a result of the defendant's unjust enrichment. In his brief, the defendant does not attack specifically either the legal theory or the factual allegations made by the plaintiff.

Unlike claims for breach of an express or implied in fact contract, a claim of unjust enrichment does not arise out of an agreement entered into by the parties. Rather, an action for recovery based upon unjust enrichment is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust. *Puttkammer v. Minth,* 83 Wis. 2d 686, 689, 266 N.W.2d 361, 363 (1978).

Because no express or implied in fact agreement exists between the parties, recovery based upon unjust enrichment is sometimes referred to as "quasi contract," or contract "implied in law" rather than "implied in fact." Quasi contracts are obligations created by law to prevent injustice. *Shellse v. City of Mayville,* 223 Wis. 624, 632, 271 N.W.2d 643 (1937).[20]

[20]For a discussion regarding the relationship between express, implied-in-fact, and implied-in-law contracts, *see Steffes, supra,* 95 Wis. 2d at 497 & n.4.

In Wisconsin, an action for unjust enrichment, or quasi contract, is based upon proof of three elements: (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit. *Puttkammer, supra,* 83 Wis. 2d at 689; Wis. J.I. Civil No. 3028 (1981).

The plaintiff has cited no cases directly supporting actions in unjust enrichment by unmarried cohabitants, and the defendant provides no authority against it. This court has previously extended such relief to a party to a cohabitation in *Estate of Fox,* 178 Wis. 369, 190 N.W. 90, 31 A.L.R. 420 (1922). In *Fox,* the plaintiff was a woman who had believed in good faith that she was married to the decedent, when in fact she was not. The court found that the decedent "husband" had "by fraudulent representations induced the plaintiff to enter into the illicit relationship." *Fox, supra,* 178 Wis. at 372. Under those circumstances, the court reasoned that it was "just and logical" to infer "from the nature of the transaction" that "the supposed husband [can be] held to have assumed to pay [for services rendered by his 'spouse'] because in point of law and equity it is just that he should pay." *Id.*

In *Fox,* the court expressly refused to consider whether the same result would necessarily follow in other circumstances. Thus, *Fox* does not supply explicit support for the plaintiff's position here where she does not claim that she thought the parties were actually married.

The *Steffes* case, however, does provide additional support for the plaintiff's position. Although *Steffes* involved a claim for recovery in contract by an

unmarried cohabitant for the value of services she performed for the decedent, the same equitable principles that governed that case would appear to apply in a case where the plaintiff is seeking recovery based upon unjust enrichment. In *Steffes,* the court cited with approval a statement by the trial judge that "[t]he question I have in mind is why should the estate be enriched when that man was just as much a part of the illicit relationship as she was and not let her have her fair dues. I don't understand that law that would interpret unjust enrichment that way and deprive one and let the other benefit and do it on the basis that there was an illicit relationship but not equally held against the both...." *Steffes, supra,* 95 Wis. 2d at 508.

As part of his general argument, the defendant claims that the court should leave the parties to an illicit relationship such as the one in this case essentially as they are found, providing no relief at all to either party. For support, the defendant relies heavily on *Hewitt v. Hewitt, supra,* and the dissent in *Steffes,* to argue that courts should provide no relief whatsoever to unmarried cohabitants until the legislature provides specifically for it. *See Steffes, supra,* 95 Wis. 2d at 521–22 (Coffey, J., dissenting).

As we have discussed previously, allowing no relief at all to one party in a so-called "illicit" relationship effectively provides total relief to the other, by leaving that party owner of all the assets acquired through the efforts of both. Yet it cannot seriously be argued that the party retaining all the assets is less "guilty" than the other. Such a result is contrary to the principles of equity. Many courts have held, and we now so hold, that unmarried cohabitants may raise claims based upon unjust enrichment

following the termination of their relationships where one of the parties attempts to retain an unreasonable amount of the property acquired through the efforts of both.[21]

In this case, the plaintiff alleges that she contributed both property and services to the parties' relationship. She claims that because of these contributions the parties' assets increased, but that she was never compensated for her contributions. She further alleges that the defendant, knowing that the plaintiff expected to share in the property accumulated, "accepted the services rendered to him by the plaintiff" and that it would be unfair under the circumstances to allow him to retain everything while she receives nothing. We conclude that the facts alleged are sufficient to state a claim for recovery based upon unjust enrichment.

As part of the plaintiff's unjust enrichment claim, she has asked that a constructive trust be imposed on the assets that the defendant acquired during their relationship. A constructive trust is an equitable device created by law to prevent unjust enrichment. *Wilharms v. Wilharms,* 93 Wis. 2d 671, 678, 287 N.W.2d 779, 783 (1980). To state a claim on the theory of constructive trust the complaint must state facts sufficient to show (1) unjust enrichment and (2) abuse of a confidential relationship or some other form of

[21]*See, e.g., Harman v. Rogers,* 147 Vt. 11, 510 A.2d 161, 164–65 (1986); *Collins v. Davis,* 68 N.C. App. 588, 315 S.E.2d 759, 761–62 (1984), *aff'd,* 312 N.C. 324, 321 S.E.2d 892; *Mason v. Rostad,* 476 A.2d 662 (D.C. 1984); *Coney v. Coney,* 207 N.J. Super. 63, 503 A.2d 912, 918 (1985); *In re Estate of Eriksen,* 337 N.W.2d 671 (Minn. 1983).

unconscionable conduct. The latter element can be inferred from allegations in the complaint which show, for example, a family relationship, a close personal relationship, or the parties' mutual trust. These facts are alleged in this complaint or may be inferred. *Gorski v. Gorski,* 82 Wis. 2d 248, 254–55, 262 N.W.2d 120 (1978). Therefore, we hold that if the plaintiff can prove the elements of unjust enrichment to the satisfaction of the circuit court, she will be entitled to demonstrate further that a constructive trust should be imposed as a remedy.

## VI.

The plaintiff's last alternative legal theory on which her claim rests is the doctrine of partition. The plaintiff has asserted in her complaint a claim for partition of "all real and personal property accumulated by the couple during their relationship according to the plaintiff's interest therein and pursuant to Chapters 820 and 842, Wis. Stats."

Chapter 820, Stats. 1985–86, provides for partition of personal property. Sec. 820.01 states in part: "When any of the owners of personal property in common shall desire to have a division and they are unable to agree upon the same an action may be commenced for that purpose." Sec. 820.01 thus states on its face that anyone owning property "in common" with someone else can maintain an action for partition of personal property held by the parties. This section codifies a remedy long recognized at common law. *See Laing v. Williams,* 135 Wis. 253, 257, 115 N.W. 821, 128 Am. St. R. 1025 (1908) (courts of equity have general jurisdiction to maintain actions for partition of personalty

and to provide any kind of relief necessary to do justice).

Ch. 842, Stats. 1985–86, provides for partition of interests in real property. Sec. 842.02(1) states in relevant part: "A person having an interest in real property *jointly or in common with others* may sue for judgment partitioning such interest unless an action for partition is prohibited elsewhere in the statutes ...." (Emphasis supplied.) Sec. 842.02(1) also codifies an action well known at common law. *See Kubina v. Nichols,* 241 Wis. 644, 648, 6 N.W.2d 657 (1943), *cert. denied, Nichols v. Kubina,* 318 U.S. 784, 63 S. Ct. 852, 87 L.Ed. 2d 1151 (1943) (partition of real property is an equitable action).

In Wisconsin partition is a remedy under both the statutes and common law. Partition applies generally to all disputes over property held by more than one party. This court has already held, in *Jezo v. Jezo,* 19 Wis. 2d 78, 81, 119 N.W.2d 471 (1964), that the principles of partition could be applied to determine the respective property interests of a husband and wife in jointly owned property where the divorce law governing property division did not apply. Because the action was not incident to divorce, separation, or annulment, the *Jezo* court rejected the parties' claim for property division under the divorce law, but did hold that a circuit court should apply the principles of partition to settle the parties' property dispute. The court stated that the "determination of the issues relating to the property of the parties to this action is to be made ... on the basis of those legal and equitable principles which would govern the rights to property between strangers." *Id.* Thus, *Jezo* appears to say that persons, regardless of their marital status, may sue for partition of property.

Apart from citing the partition statutes, the plaintiff relies heavily on *Carlson v. Olson, supra* 256 N.W.2d at 255, in which the Minnesota supreme court approved the application of common law partition principles to augment partition statutes on facts very similar to those in this case.[22] *Carlson* is one of a number of cases similar to the fact situation in the case at bar in which the court used the partition remedy to protect the interests of both parties to a nonmarital cohabitation relationship in the property acquired during their relationship. *See, e.g., Carroll v. Lee,* 148 Ariz. 10, 14, 712 P.2d 923 (1986) (partition allowed where parties acquired property in joint title through joint common effort and for a common purpose and parties had implied partnership or joint enterprise agreement).

The defendant refutes the plaintiff's claim for partition on two grounds. First, the defendant cites generally to *Slocum v. Hammond,* 346 N.W.2d 481, 494–95 (Iowa 1984), a case involving nonmarital cohabitation in which the Iowa supreme court denied the plaintiff's partition claim. *Slocum* is inapposite. In *Slocum* the court denied partition simply because the woman had failed to establish through evidence the requisite "joint venture," not because the partition

---

[22]In *Carlson,* as in the instant case, the parties held themselves out to be married. The parties filed joint income tax returns and maintained joint bank accounts. The major difference between *Carlson* and the instant case is that in *Carlson,* the plaintiff's contribution was limited to homemaking and childcare. That contribution was found sufficient to imply an agreement to share all the property accumulated during the parties' relationship. In this case, the plaintiff allegedly contributed business services and personal property as well as homemaking and childcare services.

action was an improper remedy in nonmarital cohabitation cases. *Slocum* was recently distinguished in *Metten v. Benge,* 366 N.W.2d 577, 579–80 (Iowa 1985), in which the Iowa supreme court upheld the trial court's application of equitable partition principals to settle a dispute over property by unmarried cohabitants.

Second, as we have previously said, the defendant relying on *Hewitt* groups all of the plaintiff's claims together, including the partition claim, labels them "marriage-like claims," and argues that the court should not grant relief relating to the parties' accumulated property in cases of nonmarital cohabitation. We have already discussed the defendant's position and concluded that we are not persuaded by it.

In this case, the plaintiff has alleged that she and the defendant were engaged in a joint venture or partnership, that they purchased real and personal property as husband and wife, and that they intended to share all the property acquired during their relationship. In our opinion, these allegations, together with other facts alleged in the plaintiff's complaint (*e.g.,* the plaintiff's contributions to the acquisition of their property) and reasonable inferences therefrom, are sufficient under Wisconsin's liberal notice pleading rule to state a claim for an accounting of the property acquired during the parties' relationship and partition. We do not, of course, presume to judge the merits of the plaintiff's claim. Proof of her allegations must be made to the circuit court. We merely hold that the plaintiff has alleged sufficient facts in her complaint to state a claim for relief statutory or common law partition.

In summary, we hold that the plaintiff's complaint has stated a claim upon which relief may be granted. We conclude that her claim may not rest on sec. 767.255, Stats. 1985–86, or the doctrine of "marriage by estoppel," but that it may rest on contract, unjust enrichment or partition. Accordingly, we reverse the judgment of the circuit court, and remand the cause to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The judgment of the circuit court is reversed and the cause remanded.