# Nancy A. Johnson, Jacklyn F. Hansen, Kenneth S. Johnson and Darrin P. Johnson, Plaintiffs-Respondents,

v.

# Kevin W. Johnson, Defendant-Appellant,
# Rick E. Johnson, Defendant.

Court of Appeals

*No. 2015AP588. Submitted on briefs November 17, 2015.
—Decided July 6, 2016.*

2016 WI App 60

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John F. Wilcox* of *Wilcox Law Office*, Eau Claire.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Michael J. Happe* of *Weld, Riley, Prenn & Ricci, S.C.*, Eau Claire.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. SEIDL, J. Kevin Johnson appeals an order apportioning proceeds from the sale of a home in this partition action. He argues the circuit court made several errors of law. We agree the court improperly ordered Kevin to make an equitable contribution representing the value of his use and occupancy of the home. Accordingly, we reverse.

## BACKGROUND

¶ 2. The historical facts of this case are not disputed. Nancy Johnson and her husband, Marvin Johnson, owned their home in Eau Claire. In 1999, they quitclaim deeded the residence to their five children, Jacklyn Hansen, Kenneth Johnson, Darrin

Johnson, Kevin Johnson, and Rick Johnson, as tenants-in-common. However, Nancy and Marvin retained a life estate in the property. Kevin lived in the home with his parents. His mother moved to a nursing home in July 2013, and his father died in September 2013.

¶ 3. Kevin, age fifty as of a December 2014 hearing, had lived in the home for forty-four years before moving out. He began paying his mother $200 monthly rent in the 1990s, but he was permitted to live there rent free beginning in December 2011, when he indicated he could no longer pay rent. He vacated the home in late October 2014 and moved to a motel room, where he paid $180 weekly rent.[1] Kevin was unemployed at the time of the hearing but previously worked at a company for twelve years ending in September 2012, and he received a wrongful-termination settlement from that company. He explained he was living off the settlement proceeds while looking for work.

¶ 4. In February 2014, a partition action was filed. The plaintiffs were mother Nancy, through her power of attorney, Jacklyn; Jacklyn; Kenneth; and Darrin (collectively, Jacklyn). Kevin and Rick were named as defendants.[2] The property was sold as or-

---

[1] Additionally, when asked whether he had lived alone in the home since June 2013, Kevin responded: "Well, my . . . brother Kenneth lived there part-time. He also helped . . . me and Steve and Cindy and Jackie to help clear out the house in order to get the house ready for a house sale or just to clear out the house." Kevin then confirmed he lived there alone "[d]uring the winter of 2013 and 2014."

[2] Rick did not appear at the December 2014 hearing and is not a party on appeal. WISCONSIN. STAT. § 842.04 of the partition chapter required that "[a]ny cotenant not joined as a plaintiff must be joined as a defendant." Nancy, the mother, did not appear personally.

dered by the circuit court, and the December 2014 hearing was held to determine how to distribute the proceeds.

¶ 5. An expert witness testified that the home could be rented for $750 to $900 per month. There was also testimony about various amounts expended by parties on attorney fees and on repair and maintenance of the property. The court observed the property had sold for $113,500 and the parties stipulated that just under $49,000 would be distributed on Nancy's behalf, to pay a Medicaid lien based on the value of her life estate. The court then allowed Kevin a reimbursement for air conditioning repair, as well as reimbursements of all the other parties' expenses and attorney fees, which were not disputed. As explained in the court's written order, the total amount remaining to be distributed to the five sibling tenants-in-common after all expenses was $33,265.10, which would result in five equal shares of $6,653.02.

¶ 6. However, Jacklyn sought an equitable contribution for the value of rent Kevin should have paid for twelve months of living in the home. At the hearing, the circuit court stated:

> So then the next question is should—before the money is split up, whatever is left, should there be an amount deducted from [Kevin's] distributive share, something representing the reasonable cost of rent? And I find that there should be something deducted. The testimony [from the] credible expert [was] that the fair rental value of that location would be between $750 and $900 a month. . . .
>
> However—and [the expert] testified to it . . . . And that is that there is a significant collateral benefit to having

---

All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

somebody occupy a residence. A residence that is used and opened and people going in and out of doors, it preserves the atmosphere on the inside of the home. In other words, it prevents the home . . . from becoming stale, musty. Somebody who occupies a home, such as [Kevin] did, was able to ascertain, for example, and take remedial action when the air conditioning went out. That's an added value.

Even though [the expert] didn't think it was a problem, . . . I'm going to take judicial notice of the fact that in many instances if a home . . . isn't occupied, there is an exclusion clause that after so many months—and who knows if that would have applied here—it's common to have exclusions for coverage . . . if a residence is unoccupied. So having [Kevin] in the home, even though he didn't pay rent there, was a discernable benefit to not only himself but his other siblings . . . . [A]nd having somebody live in a house . . . is a . . . security benefit because it's well known that unoccupied homes . . . are a magnet for crime. And so even though [Kevin] didn't view it as such, perhaps, he . . . was . . . an added value. So he's entitled to some credit for that.

¶ 7. The court then considered the expert's valuation testimony but stated it also had to "take into account the reasonable value. What was the reasonable value to [Kevin]?" It further stated it had to consider that value relative to the prior deal between Kevin and his mother for $200 monthly rent. The court explained:

$200 a month certainly for living in a house like that is small, but we know that in terms of value, [Kevin] received value equaling at least $100 [sic] a week, because that's what he's paying now at the [motel]. So, therefore, I do find that [Kevin] did derive a benefit, albeit not worth $750 to $900, but he should have paid it seems to me $400 a month on the average

of 100 bucks a week. So 400 times 12, whatever that is, that should be taken out, if you will, of [Kevin's] distributive share, set aside, split up into five chunks . . . .

¶ 8. Before the court gave its oral decision, Kevin had referred the court to his memorandum of authorities. The court acknowledged Kevin relied on two cases, a *Rainer* case and a *Klawitter* case, "which basically stands for [the] proposition that in this type of a case, allowance for use of occupancy shouldn't be made unless the equities of the particular case require it."[3] After its oral ruling set forth above, Kevin asked the court to explain why the equities required him to contribute for the use of occupancy. The court responded:

Well, here's why the equities require that [Kevin] pay, what I think, a minimal amount of $400. We know what that premises would rent for, based upon the testimony of [the expert], who was a credible witness. We also know that [Kevin] has been living there for 18 months rent free. We know that the plaintiffs—Kevin Johnson's siblings—could claim rent for 18 months. [Kevin], in fairness, nobody should occupy a house or home for nothing. That . . . just doesn't make common sense. Nobody lives in this world without paying for something. And $400 a month is . . . equitable, because . . . he's getting a deduct—according to the [expert], he's getting a $350 deduct a month off of the minimum rental price of $750. And for all those reasons, the equities favor that [Kevin] pay something. And that just happens to equal what he's currently

---

[3] *See Rainer v. Holmes*, 272 Wis. 349, 75 N.W.2d 290 (1956); *Klawitter v. Klawitter*, 2001 WI App 16, 240 Wis. 2d 685, 623 N.W.2d 169.

paying, $100 [sic] a week, $400 [sic] a month, which is really cheap rent.[4]

¶ 9. Finally, Jacklyn's counsel persuaded the court that Kevin's $4800 rent contribution should instead be split only between the other four cotenant siblings, excluding Kevin. Thus, his share was reduced by the full $4800, and the other siblings' respective shares were increased by $1200. Kevin now appeals.

## DISCUSSION

¶ 10. Kevin does not appeal the circuit court's grant of partition to Jacklyn. Rather, he challenges the court's ruling that his distributive share was subject to a reduction for his use and occupancy of the property in equity. He further argues: that there should have been no reduction because he was a tenant-at-will until the time he vacated; that if any reduction was appropriate, it should have been distributed solely to his mother as the owner of a life estate; and if not to her, then the reduction should have been divided equally between all five sibling cotenant owners.

¶ 11. At the outset, we reject the tenant-at-will and sole-distribution-to-mother arguments because they are raised for the first time on appeal, and

---

[4] Jacklyn's counsel then stated, "Judge, . . . if I could just clarify those figures. The $4,800 is 12 times 400." The court responded, "Okay. Well, whatever 12 times 400 is."

We observe the circuit court's numbers were off in two respects. First, Kevin testified his current motel rent was $180 weekly, not $100. Second, there are 52 weeks in a year, not 48 (which the court based on 12 months of 4 weeks each). Accordingly, to the extent the court intended that Kevin pay based on the value of his current motel rent, the amount would be $9,360 (52 times $180).

Jacklyn objects to both arguments on that ground. *See Jackson v. Benson*, 218 Wis. 2d 835, 901, 578 N.W.2d 602 (1998) ("It is the often repeated rule in this state that issues not considered by the circuit court will not be considered for the first time on appeal.").

¶ 12. WISCONSIN STAT. § 842.02 authorizes a partition action. This section represents a codification of the common law remedy of partition.[5] *Klawitter v. Klawitter*, 2001 WI App 16, ¶ 7, 240 Wis. 2d 685, 623 N.W.2d 169 (citing *Watts v. Watts*, 137 Wis. 2d 506, 535, 405 N.W.2d 303 (1987)). "In Wisconsin partition is a remedy under both the statutes and common law." *Watts*, 137 Wis. 2d at 535. Partition is an equitable action. *Klawitter*, 240 Wis. 2d 685, ¶ 7 (citing *Kubina v. Nichols*, 241 Wis. 644, 648, 6 N.W.2d 657 (1942)).

¶ 13. We apply the erroneous exercise of discretion standard in reviewing decisions in equity. *Id.*, ¶ 8. Discretionary acts are upheld if the circuit court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Id.*

¶ 14. WISCONSIN STAT. § 842.14(4) "expressly authorizes a circuit court *in equity* to order compensation by one party to the other when a partition does not equalize the positions of the parties." *Klawitter*, 240 Wis. 2d 685, ¶ 9. It provides:

---

[5] Codification of the partition remedy is not, however, a recent development. A partition statute existed in Wisconsin at least as far back as 1872. *See Deery v. McClintock*, 31 Wis. 195, 204, 205 (1872) (citing partition statutes and setting forth language similar to current WIS. STAT. § 842.14(1)).

If partition is adjudged, and if it appears that it cannot be made equal between the parties without prejudice to the rights or interests of some of them, the court may provide in its judgment that compensation be made by one party to the other for equality of partition, according to the equity of the case . . . .

Wis. Stat. § 842.14(4).

¶ 15. Several cases establish the rule as to when a resident cotenant may be required to pay a nonresident cotenant for the value of use and possession. In *Rainer v. Holmes*, 272 Wis. 349, 75 N.W.2d 290 (1956), the court first explained the established rules that "a cotenant in possession may, in a partition action, be reimbursed for expenditures for improvements made in good faith for the preservation and enhancement in value of the common property," and that where that person "has received rents and profits from the common property during [the] occupancy, the value of such rents and profits is to be offset against the value of the permanent improvements made . . . ." *Id.* at 352–53.

¶ 16. However, the *Rainer* court observed the authorities were split on the question presented there, a requested "offset of the value of use and occupancy" by the cotenant in possession. *Id.* at 353. The court's review of three A.L.R. case annotations revealed that "generally the cotenant in possession is not held accountable for use and occupancy in the absence of ouster or agreement to pay rent." *Id.* Further, it indicated: "A number of presumptions and inferences are indulged in connection with the relation of cotenancy. Until an actual ouster is shown, the law presumes that the possession of one co-owner is the possession of all . . . ." *Id.* (quoting 14 Am. Jur. *Cotenancy* § 102, p. 166; citing *Challefoux v. Ducharme*, 4 Wis. *554 (1855)). The court held: "In view of all the

397

authorities, we are of the opinion that an allowance for use and occupancy in a case such as this should not be made unless the equities of the particular case require it." *Id.*

¶ 17. The next case to address this issue was *Elsinger v. Baierl*, 12 Wis. 2d 471, 107 N.W.2d 580 (1961), which quoted the following A.L.R. annotation:

> "The rule which prevails in the majority of jurisdictions, founded on the plainest principles of property ownership, is that, absent statute construed to work a different result . . ., a tenant in common, joint tenant, or coparcener who has enjoyed occupancy of the common premises or some part thereof is not liable to pay rent to the others therefor, or to account to them respecting the reasonable value of his occupancy, where they have not been ousted or excluded nor their equal rights denied, and no agreement to pay for occupancy, or limiting or assigning rights of occupancy, has been entered into."

*Id.* at 475–76 (quoting 51 A.L.R.2d 388, 413).[6] The court then observed that two cases—one being *Rainer*—were informative.[7] It explained:

> Both cases were partition cases wherein the interests of tenants in common were involved. In neither case was the tenant in common, who had enjoyed the use and occupancy of the real estate for many years, required to account to her cotenants for the reasonable value of the use of the premises, although it was intimated that, if equity demanded, the same could be charged as an offset to claims for improvements, the retirement of liens, etc.

---

[6] *Rainer*, 272 Wis. at 353, cited three A.L.R. annotations, whereas *Elsinger v. Baierl*, 12 Wis. 2d 471, 475–76, 107 N.W.2d 580 (1961), instead cited a fourth.

[7] The other case cited was *Hermance v. Weisner*, 228 Wis. 501, 279 N.W. 608 (1938).

*Id.* at 476. After observing that the prior cases implicitly adopted the majority rule, the court concluded:

> Under the majority rule, which we hereby expressly adopt, Anna Elsinger was not liable for rent . . . . She was in peaceable possession. The record does not disclose any promise to pay. It does not disclose any ouster or exclusion of her cotenant, nor any of the other recognized exceptions to the rule.

*Id.*

¶ 18. The rule was next recognized in *Heyse v. Heyse*, 47 Wis. 2d 27, 36, 176 N.W.2d 316 (1970), another partition case, which stated: "Ordinarily, a tenant in common is not obliged to pay rental to the nonoccupying cotenant." However, citing *Elsinger*, the court recognized a "rental payment may be due where the conduct of the cotenant results in the ouster of the other." *Id.* The court then affirmed the rent payment ordered by the circuit court, concluding "an ouster" was shown when the cotenant locked a family out of the premises, the family broke in, and the family was "obliged to leave the premises the following day." *Id.*

¶ 19. Finally, we come to *Klawitter*, 2001 WI App 16, 240 Wis. 2d 685, 623 N.W.2d 169, also a partition case. Janet and Elmer Klawitter were divorced but subsequently purchased a farmette as joint tenants under a land contract. *Id.*, ¶ 3. The parties' relationship deteriorated and, after cohabiting for seven years, Janet left the residence. *Id.*, ¶ 4. Thereafter, Elmer made all of the land contract, real estate tax, insurance and other maintenance payments relating to the property. *Id.* Approximately three years later, Janet filed for partition. *Id.*, ¶ 5. Elmer counterclaimed, seeking contribution for half of the payments and expenses since her departure. Following a bench trial, the circuit

court granted the request for partition and ordered the property sold, but the court denied Elmer's request. The court reasoned that Elmer's right to a proportionate share of reimbursement was offset by Janet's equitable entitlement to a proportionate share of Elmer's use and occupancy of the property. *Id.*

¶ 20. On appeal, Elmer argued that because Janet voluntarily departed, she should not be heard in equity to assert an offset against his contribution claim. *Id.*, ¶ 12. We observed that the evidence regarding voluntary departure was conflicting. *Id.* Janet testified Elmer was abusive to her, he had threatened her with a weapon, and she left without advance notice because she feared he would prevent her from leaving. *Id.* Elmer denied the accusations. *Id.* We explained:

> But the trial court did not see a need to resolve this dispute. Instead, the court took a more practical approach, noting that the parties' marital-like relationship had soured. Thus, the court reasoned, "When that relationship ended, one or the other, common sense tells us, is going to have to leave the premises." Therefore, the court declined to hold Janet's departure, whether voluntary or involuntary, against her. We agree with the trial court's "commonsense" handling of this event.

*Id.*

¶ 21. Citing *Rainer*, we acknowledged the general rule stated in A.L.R. annotations that a cotenant in possession is not liable for use and occupancy in the absence of ouster or an agreement to pay rent. *Klawitter*, 240 Wis. 2d 685, ¶ 16. We then summarized and relied on *Rainer*'s holding that "generally an allowance for use and occupancy is not proper, but the equities of a given case may permit such an allowance." *Id.*, ¶¶ 16–17 (citing *Rainer*, 272 Wis. at

353). We held the circuit court's rationale—essentially, that there was a constructive ouster—was a proper exercise of equity discretion.[8] *Id.*, ¶ 17.

¶ 22. In summary, the applicable rule of equity in Wisconsin was adopted from an A.L.R. annotation and set forth in *Elsinger*, 12 Wis. 2d at 475–76. *See supra* ¶ 17. Applying the rule, two cases have required a cotenant in possession to reimburse a fellow cotenant for the value of use and possession of the premises: in one case there was ouster, *see Heyse*, 47 Wis. 2d at 36, and in the second there was "constructive ouster" based on the commonsense proposition that one cotenant must vacate when a marital-like relationship between two cotenants ends, *see Klawitter*, 240 Wis. 2d 685, ¶ 17.

¶ 23. Turning to the present case, and applying the foregoing case law, we conclude the circuit court erroneously exercised its equity discretion. None of the circumstances set forth in the *Elsinger* rule were present here. Rather, Kevin had been long residing in the home rent free with his mother's permission. We have reviewed the December 2014 hearing transcript and found no evidence that rent was subsequently promised by, or demanded of him, and Jacklyn does not assert any such promise or demand was made. Further, Kevin's use and possession of the premises was not to the exclusion of any other party. Jacklyn does not assert Kevin ever attempted to exclude any other cotenant from the premises, and Kevin testified that

---

[8] However, we then reversed in part and remanded for the circuit court to determine the respective values of Elmer's contribution claim and Janet's rent claim, to "determine the amount, if any, of Elmer's 'balancing' payment." *Klawitter*, 240 Wis. 2d 685, ¶ 21.

one of the siblings also resided in the home part-time after their mother left and that several of them worked together to clean out the premises. Further, Jacklyn cites no other reasons that Kevin should be liable in equity for the value of his use and possession of the premises apart from the circuit court's rationale that it was unfair for anyone to live rent free.

■

¶ 24. If a court could order a contribution or offset for the value of a cotenant's use and occupancy merely in the name of equity alone—because a given court deems it unfair for persons to live "rent free"—it would vitiate the very rule that such contributions or offsets are disallowed except where the equities of a specific case require it. In other words, there is a presumption that rent-free living by a cotenant in an owned property *is* equitable. The long-standing rule in Wisconsin, adopted from the majority of jurisdictions, is essentially that, absent other pertinent factors, a cotenant owner is not liable for rent to fellow cotenants who have neither been excluded from the premises nor demanded rent. *See Elsinger*, 12 Wis. 2d at 475–76.

¶ 25. Accordingly, the circuit court erroneously ordered an offset to Kevin's distributive share of the sale proceeds to account for his use and possession of the premises.[9] The court's order determined the remaining proceeds of the sale after all expenses. On

___

[9] Because we reverse on other grounds, we need not address whether the circuit court erroneously ordered that Kevin was not entitled to his proportionate one-fifth share of the value of his use and occupancy of the premises. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (appellate courts not required to address every issue raised when one issue is dispositive).

remand, the court shall issue an order reflecting an equal distribution of the funds among the five cotenant siblings.

¶ 26. Finally, we note Kevin, pro se, filed several motions with this court to strike his own appellate briefs due to disagreements with his counsel. At the time of filing, Kevin was represented by counsel, who remains attorney of record on appeal. We therefore do not consider the pro se motions, and we deny them on that basis. *See State v. Debra A.E.*, 188 Wis. 2d 111, 138, 523 N.W.2d 727 (1994) (appellate court may, but need not, consider pro se briefs filed by represented appellant).

*By the Court.*—Order reversed and cause remanded with directions.