202 N.J. Super. 505 (1985)
495 A.2d 469
SUSAN J. MANGONE, PLAINTIFF,
v.
JESSE G. MANGONE, DEFENDANT.
Superior Court of New Jersey, Chancery Division Bergen County, Family Part.
Decided May 3, 1985.
*506 Kurt E. Johnson for plaintiff.
*507 Genevieve K. LaRobardier for defendant (Martin G. Margolis, attorney).
SORKOW, P.J.F.P.
This is defendant's motion to dismiss so much of plaintiff's complaint that asks for enforcement of an alleged lifetime support contract which was made during the parties six years of premarital cohabitation and for equitable distribution of property acquired during said period of premarital cohabitation. Defendant argues that both of plaintiff's prayers for relief fail to set forth a cause of action upon which relief can be granted. In the alternative, defendant seeks a partial summary judgment as to the two subject prayers for relief.
The parties began a relationship with each other in the summer of 1975. Plaintiff was a nurse and defendant was then a medical student. Their relationship developed during the next two years. In August 1977, they both moved into a residence in East Rutherford, Bergen County, New Jersey. Their wedding to each other occurred in August 1981. Until then, the parties shared living quarters and incomes. Plaintiff alleges it was her money that sustained the parties while defendant used his earnings to acquire valuable personalty and real property. In December 1982, plaintiff filed her action for divorce.

AS TO EQUITABLE DISTRIBUTION
It appears that plaintiff seeks to enforce an alleged contract for lifetime support and a sharing of assets acquired prior to the marriage. Plaintiff seeks to expand the concept of the nonmarital "palimony" contract found in Kozlowski v. Kozlowski, 80 N.J. 378 (1979) and Crowe v. DeGioia, 90 N.J. 126 (1982), by seeking equitable distribution of property legally and beneficially acquired by defendant during the period of time the parties lived together. She seeks to do so based on principles of equity.
*508 The basis of entitlement to equitable distribution is founded on statute and its application is thus limited. Plaintiff's complaint in this regard fails because such premarital acquired property is immune from equitable distribution. The statute is clear and its application since adoption leaves no doubt that property separately owned at the time of the marriage remains the property of the then owner and is not subject to equitable distribution. N.J.S.A. 2A:34-23; N.J.S.A. 37:2-12; Painter v. Painter, 65 N.J. 196 (1974); Capodanno v. Capodanno, 58 N.J. 113, 119 (1971). Equitable distribution is a remedy that is solely the creature of the Legislature. It is created and defined by statute. The interpretation that plaintiff would attach to the statute goes beyond the plain meaning of the statute's language. This court will not and cannot disturb the law's language and the growing line of cases that have defined equitable distribution beginning with Painter v. Painter, supra, by adding to distributive property that which was acquired prior to marriage when the parties lived together.
The Supreme Court of New Jersey has not recognized the outlawed common law marriage by its decisions in Crowe and Kozlowski, supra. As Judge Debevoise in Anastasi v. Anastasi, 532 F. Supp. 720 (D.N.J. 1982) stated:
... the most that can be said is that the State recognizes and accepts the existence of such a status (unmarried couples living together) and will enforce any financial arrangement to which the parties have agreed. [at 724]
At most, if there is a contract, plaintiff is limited to proof of damages for breach thereof and not to any equitable distribution of pre-marital acquired property. Prayer "E" of the complaint will therefore be dismissed for failure to set forth a claim upon which relief may be granted.

AS TO THE CONTRACT FOR LIFETIME SUPPORT
That "living together" relationships exist is a fact of our society. The marriage contract is being diluted and subject to an epidemic level of attack. "Standards of conduct change. Today's innovations have a way of becoming tomorrow's conventional *509 wisdom." DeVita v. DeVita, 145 N.J. Super. 120, 131 (App.Div. 1976) (Antell, J.A.D.). Indeed, many accepted mores have been and are being tested and modified. Such is the way of dynamic society. Plaintiff would have this court support her position and make a further incursion into the parameters of the marriage relationship.
As stated above, the new live-together relationship is recognized by the Supreme Court of New Jersey which confirmed and enforced contracts for support found to have been created by people who choose this alternative life style.
In the instant case assuming arguendo that such a "support for life" contract exists, what then is the effect of the parties entering a marriage contract? Indeed, a ceremonial marriage took place on August 9, 1981. This is the salient fact that serves to distinguish this case from Crowe and Kozlowski, supra. The parties here voluntarily and knowingly entered into a new contract. The special circumstances in the two palimony cases are not found in this cause of action. Does not such a contract of marriage supersede the oral implied or express contract of support? Is there a merger of these two contracts? The courts that enforce palimony claims do so on contractual nonmatrimonial grounds. Plaintiff argues against this motion saying that her complaint for relief should not be denied simply because it does not fit into a conventional category of matrimonial actions. She seeks relief on broad principles of general equity. Such principles often result in the nonconventional. However, this is not such a case.
It has long been held that a subsequent contract covering the same parties and subject matter extinguishes the prior contract. 17 Am.Jur.2d at 952. Parties to a contract have the privilege to alter their first contract by entering new contract obligations. Where there are different and inconsistent terms, then the intention of the parties governs. Rosenberg *510 v. D. Kaltman & Co., 28 N.J. Super. 459 (Ch.Div. 1953). Here, there are no different terms in the two contracts. The parties are the same. The intentions of the parties are the same. Entry into the marriage contract is proof of intention. It was done voluntarily and knowingly. The goals and expectations of the premarital relationship were the same at the time the marriage contract was created. The parties entered the marriage contract without reservation. This court holds that when the parties married each other whatever contractual rights existed before the wedding merged into the greater contract of marriage. Clearly, the undertaking to support one's spouse and share one's assets in addition to all other marital promises finds full expression and performance in the contract of marriage. Plaintiff's alleged contract is subsumed and merged into the contract created by the marriage vows. To allow plaintiff's claims to succeed would duplicate the relief (alimony and equitable distribution) to which she is entitled (however ultimately measured) in this dissolution action.
It is argued that marriage could be used by the unscrupulous suitor to prevent or limit a spouse's contractural rights gained in a live together circumstance. Although speculative at best, this court is certain that when presented with such circumstances the equitable principles which this court administers and enforces will not be found lacking.
Finding a merger of two contracts and that plaintiff's cause of action rests on the marriage contract, it must follow that plaintiff's prayer for damages for breach of the live-together contract fails to state a claim upon which relief can be granted and the same is dismissed.
By reason of the foregoing disposition, this court need not address the summary judgment issue.
Counsel for defendant will submit an order in accordance with the foregoing.