219 N.J. Super. 528 (1987)
530 A.2d 847
FREDERICK J. ROLLE, III, PLAINTIFF,
v.
PATRICIA S. ROLLE, DEFENDANT.
Superior Court of New Jersey, Chancery Division Ocean County, Family Part.
Decided May 15, 1987.
*530 Frank A. Louis, for plaintiff (Pogarsky & Louis, attorneys).
Ralph E. McKay, for defendant.
FALL, J.S.C.
This matter comes before the court upon plaintiff's motion in limine for a declaration that the principles enunciated in Mangone v. Mangone, 202 N.J. Super. 505 (Ch.Div. 1985) should be applied in this case with respect to defendant's claim for distribution of premarital property.
The principal issue is whether assets acquired by a party in contemplation of marriage prior to and during a substantial period of cohabitation followed by a marriage are subject to equitable distribution in accordance with N.J.S.A. 2A:34-23. This court must also consider whether such property is otherwise distributable under a variety of equitable remedies.
For the purposes of this motion, the following facts are not in dispute. Plaintiff and defendant began cohabiting in June 1976. They married on November 22, 1983, separated on November 20, 1985 and the complaint for divorce was filed on July 10, 1986. Plaintiff purchased what became the marital domicile in his name only on March 25, 1976 some three months prior to *531 commencement of cohabitation. Defendant had selected the residence. It was acquired in contemplation of the cohabitation and of marriage. At the time the residence was purchased and thereafter the parties had an express and implied agreement that they would be married in the future and during the cohabitation they would share in the acquisition of property and assets. The residence had to be altered to suit the needs of the parties. They began cohabiting in that property in June 1976 and continued to do so until their separation in November 1985. Defendant continues to reside there.
During the period of cohabitation and prior to the marriage plaintiff acquired in his name other property and business assets. At no time did defendant advance any of her funds for the purchase of these assets. Subsequent to the marriage there were little, if any, assets acquired by either party.
Defendant contends that the marital domicile as well as the assets acquired during cohabitation by plaintiff were acquired in contemplation of the marriage. She alleged that they had entered into a domestic partnership whereby all assets were to be shared and that each made contributions to the relationship during that cohabitation period as if they had, in fact, been married.
Research reveals three New Jersey decisions which have dealt with the issue of distributability of assets acquired by one party during a period of cohabitation followed by a marriage or in contemplation thereof under N.J.S.A. 2A:34-23. A brief analysis of each case is necessary.
In Mangone, supra, the wife sought enforcement of an alleged lifetime support contract and equitable distribution, under N.J.S.A. 2A:34-23, of assets acquired by the husband during a six-year period of cohabitation followed by a short-term marriage. The wife alleged it was her money which sustained the parties during the cohabitation while the husband used his earnings to acquire substantial real and personal property. The court viewed the wife's complaint as an attempt *532 to expand the concept of the nonmarital palimony contract, found in the cases of Kozlowski v. Kozlowski, 80 N.J. 378 (1979) and Crowe v. DeGioia, 90 N.J. 126 (1982), on principles of equity by seeking an equitable distribution of property legally and beneficially acquired by the husband during a period of cohabitation followed by a marriage. Mangone, 202 N.J. Super. at 507. The Mangone Court rejected this claim, holding that premarital property is immune from equitable distribution because the plain language of that statute makes it clear the property must be acquired during the marriage, not before it. Id. at 508. The court stated that if there is a contract between the parties to share in premarital assets, the wife would be limited to proof of damages for the breach thereof and not to equitable distribution. Ibid. The court deemed the entry into the marriage as the formation of a new contract which superseded any premarital contract and found "when the parties married each other whatever contractual rights existed before the wedding merged into the greater contract of marriage." Id. at 510. Though the court was applying this "merger" doctrine to the wife's claim of a lifetime support contract, it is apparent that under such an analysis, a premarital implied or express contract to share in the assets acquired by one spouse during a cohabitation period would also be deemed merged into and extinguished by the contract of marriage. That intent can be implied from the following:
... Clearly, the undertaking to support one's spouse and share one's assets in addition to all other marital promises finds full expression and performance in the contract of marriage. Plaintiff's alleged contract is subsumed and merged into the contract created by the marriage vows. To allow plaintiff's claims to succeed would duplicate the relief (alimony and equitable distribution) to which she is entitled (however ultimately measured) in this dissolution action. [Ibid.]
In Raspa v. Raspa, 207 N.J. Super. 371 (Ch.Div. 1985), the husband had purchased a house in his name only four days prior to the marriage. The parties then moved into the house and lived there as husband and wife for 13 years until the filing of the complaint for divorce. The wife had participated in the selection of the house. The Raspa Court found that the strict *533 application of N.J.S.A. 2A:34-23 would be inequitable under the unique facts involved. Id. at 385. It held that equity dictates that the rule of immunity of assets acquired prior to the marriage be departed from when the parties jointly select and one party purchases an asset in contemplation of marriage and for the purposes of the marital enterprise. The Raspa Court placed great emphasis on the facts that the wife had contributed to the mortgage payments and maintenance of the house, she had participated in its selection and the house was intended to be and was for 13 years the marital residence.
In Coney v. Coney, 207 N.J. Super. 63 (Ch.Div. 1985), the parties began cohabiting in 1968 while they were still married to others. In November 1971 they found a house they desired to purchase but the husband was still married so title was taken in the name of the wife as she had obtained her divorce. Eventually his divorce became final and the parties married in November 1978. The complaint for divorce was filed in September 1984. During the entire period from November 1971 until September 1984 the parties lived in the property as a family unit acting as husband and wife even during the period of cohabitation. The wife contended that since the property was solely in her name and acquired prior to the marriage it was not subject to equitable distribution. The court pointed out that in Painter v. Painter, 65 N.J. 196 (1974) the Supreme Court concluded the date of the filing of the complaint should control for purposes of determining what property is eligible for equitable distribution. It further noted in Smith v. Smith, 72 N.J. 350 (1977), where there was a property settlement agreement executed prior to the filing of the divorce complaint, the Supreme Court held that the date of such agreement should control for equitable distribution purposes. The Coney Court cited these cases as examples of circumstances in which the courts have not hesitated to redefine the statutory phrase "during the marriage" at least so far as determining the termination date of the marriage. The court determined that it could therefore redefine the statute by expanding its beginning *534 point to include premarital property as distributable under N.J.S.A. 2A:34-23 if acquired in contemplation of marriage under an implied contract or agreement for the sharing of this premarital property. It is interesting to note that the court then found that the same result under other remedies would also obtain even if the property were deemed not to be subject to equitable distribution. It stated:
But even assuming that the property is not equitably distributable under the statute, there are other remedies available under the facts of this case to achieve the same result. These remedies may be stated as (1) resulting trust, (2) constructive trust, (3) quantum meruit, (4) quasi-contract, and (5) transmutation. [207 N.J. Super. at 74]
The court discussed each of these equitable remedies and concluded that it could find no reason why such equitable remedies, which are available to parties who cohabited but did not marry, should not also be available to those parties who ultimately are married.
It is clear to this court that the purpose of Judge Gladden in Coney, as well as that of Judge Krafte in Raspa, was to avoid a grossly inequitable result if N.J.S.A. 2A:34-23 were to be strictly applied. Each judge fashioned an "in contemplation of marriage" exception to that statute whereby an asset acquired prior to the marriage is considered to have been acquired "during the marriage" if such asset was acquired by one of the parties "in contemplation of marriage" and then the acquired asset became an integral part of the marital enterprise upon the marriage of the parties. Thompson, "Premarital Assets Revisited: The Asset Acquired `In Contemplation of Marriage'," 6 N.J. Family Lawyer 3 (1986).
This court finds significant legal and practical problems with this approach. The "in contemplation of marriage" exception provides little guidance for a court or practitioner. There is no question that our courts have interpreted N.J.S.A. 2A:34-23 to equitably place limitations upon the strict application of that statutory language "acquired ... during the marriage" when dealing with the termination date of eligibility of an asset for distribution thereunder. However, there is a significant difference *535 between the exceptions created in Painter and in Smith from these "in contemplation of marriage" decisions. In the former, while dates other than the termination date of the marriage were utilized for equitable distribution purposes, nevertheless these dates were still "during" and "within" the marriage. The "in contemplation of marriage" case law exception would have a court expand the actual time period within which the marriage existed. Such an expansion would be to an unspecifiable and undefined date.
This court holds that N.J.S.A. 2A:34-23 by its explicit language does not permit an equitable distribution of property legally or beneficially acquired by a party prior to the date of the marriage. It is a simple and definitive rule. In Kozlowski v. Kozlowski, supra, our Supreme Court held that property acquired during periods of cohabitation is beyond the scope of N.J.S.A. 2A:34-23, and therefore is not subject to equitable distribution. The same rule should be applicable where the cohabitation is, in fact, followed by a marriage. There is no logical, equitable or legal reason for our courts to sanction different treatment of assets acquired during cohabitation by the creation of judicial exceptions to a statute the intent of which leaves no doubt. The availability of equitable remedies to deal with factual situations involving property acquired during a period of cohabitation followed by a marriage does not require the application of N.J.S.A. 2A:34-23 to periods of time outside the parameters of the marital relationship. The premarital acquisition of property, whether in contemplation of marriage or not, during a period of cohabitation followed by a marriage does not leave the non-property spouse without a remedy.
This court holds that equitable remedies such as those discussed in Coney are available, under the proper factual circumstances, to a spouse laying claim to assets acquired by the other spouse during their period of cohabitation prior to their marriage. The establishment of a rule of "merger" under Mangone invites an inequitable result. It should be noted, however, that even under such a "merger" doctrine, the application *536 of equitable remedies such as resulting trust, constructive trust, quantum meruit and others would not be foreclosed, since they are not founded in contract but rather in conduct. Mangone cites the case of Rosenberg v. D. Kaltman & Co., 28 N.J. Super. 459 (Ch.Div. 1953) for the proposition that a subsequent contract covering the same parties and subject matter extinguishes the prior contract. In Mangone, the entry into the marriage contract was said to be the expression of intention to extinguish the prior implied contract between the cohabitants. However, a careful examination of the law of contracts reveals that the terms of the second contract must be so inconsistent with those of the former contract that they cannot stand together. Id. at 464. While the marriage contract and the cohabitation contract are obviously between the same parties, it is equally evident that they do not cover the same subject matter, nor are they inconsistent. Under N.J.S.A. 2A:34-23 only property acquired "during the marriage" may be distributed. Property acquired during a period of cohabitation prior to the marriage cannot be equitably distributed under that statute. Accordingly, an implied or express premarital contract to share in the distribution of property acquired during the cohabitation period covers a different subject matter.
The cases of Mol v. Mol, 147 N.J. Super. 5 (App.Div. 1977), Scherzer v. Scherzer, 136 N.J. Super. 397 (App.Div. 1975) and Griffith v. Griffith, 185 N.J. Super. 382 (Ch.Div. 1982) are not inconsistent with this analysis since the interests deemed distributable therein were clearly acquired "during the marriage." Further, there is no reason to conclude that the marriage contract is inconsistent with the premarital cohabitation contract. They cover different subject matters and different rights. A valid premarital express or implied contract for the sharing of assets acquired by either of the parties during a period of cohabitation is not merged into or superseded by the contract of marriage any more than an ante-nuptial contract is superseded by the entry into the marriage contract. The terms of an express or implied contract between cohabitants to share in the acquisition of property during such cohabitation coupled *537 with the contemplation of a marriage is not so inconsistent with the marriage contract and the property distributable thereunder that they cannot stand together.
Additional foundation for this court's rulings can be found in Kozlowski v. Kozlowski, supra. The basic holding of that Supreme Court case is that a man and woman who cohabit without a promise of marriage may enter into an enforceable contract. Kozlowski also holds that a contract between the parties for a share of the man's assets accumulated during the period of cohabitation is barred by the Heart Balm Act, N.J.S.A. 2A:23-1 et seq. That principle is not applicable to this case since there was a marriage. The aforesaid statute merely bars a suit upon breach of a promise to marry.
The concurring opinion of Justice Pashman in Kozlowski is instructive:
Given this circumstance, it would be unwise to require some form of contract as a prerequisite to relief in our courts. Rather, we should presume `that the parties intend[ed] to deal fairly with each other' upon dissolution of the relationship, Marvin [v. Marvin], supra, 18 Cal. 3rd [660] at 683, 134 Cal. Rptr. [815] at 830, 557 P.2d [106] at 121, and consequently, in the absence of agreement, `employ the doctrine of quantum meruit, or equitable remedies such as constructive trust or resulting trusts' in order to insure that one party has not been unjustly enriched, and the other unjustly impoverished, on account of their dealings, id., 18 Cal. 3rd at 665, 134 Cal. Rptr. at 819, 557 P.2d at 110. See, e.g., Hewitt [v. Hewitt], supra [62 Ill. App.3d 861], 20 Ill.Dec. [476] at 481-482, 380 N.E.2d [454] at 459-460.
Since such remedies are grounded in equity, their applicability would depend upon the facts and circumstances of each particular case. The factors to be weighed by a trial judge would include, as examples only, the duration of the relationship, the amount and types of services rendered by each of the parties, the opportunities foregone by either in entering the living relationship, and the ability of each to earn a living after the relationship has been dissolved. These remedies may be cumulative or exclusive. Decisions concerning the complexities that might arise upon application of these principles must be determined on a case by case basis. [80 N.J. at 390-391].
This court can find no basis for a different result when dealing with a premarital express or implied contract to share in the accumulation of assets by either party during the cohabitation followed by a marriage. These equitable remedies are available for application on a case by case basis.
*538 This subject has been dealt with in other jurisdictions. In Watkins v. Watkins, 143 Cal. App.3d 651, 192 Cal. Rptr. 54 (Ct.App. 1983) the court held a premarital implied contract to share assets acquired by either party during a period of cohabitation followed by a marriage of those parties to be enforceable after the marriage. In Watkins, the parties cohabited for six years but were married only eight months. Under the husband's theory the wife forfeited her property rights under the implied contract when she entered into the marriage. The court rejected such an inequitable result. Similar results were reached in Matter of Lindsey, 101 Wash.2d 299, 678 P.2d 328 (Sup.Ct. 1984), Glasgo v. Glasgo, 410 N.E.2d 1325 (Ind. App. 1980) and in Chestnut v. Chestnut, 499 N.E.2d 783 (Ind. App. 1986).
The counterclaim for divorce in this case does not allege a contract for the sharing of assets acquired by plaintiff prior to the marriage during the period of cohabitation, although such a contract is alleged in the certifications submitted by defendant. This court has entered an order permitting defendant to file an amended counterclaim to specify her claims for equitable relief based upon such a contract and upon other equitable remedies. These will be appropriately dealt with based upon the facts of this case elicited through testimony and upon the applicable principles of law.
Counsel for defendant shall submit an order consistent with the foregoing.