570 A.2d 1308

POPPY B. WAJDA, PLAINTIFF, v. ANTHONY C. WAJDA, DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part
Monmouth County

Decided June 2, 1989.

*Richard J. Reich* for plaintiff (*Jacobowitz & Grabelle*, Attorneys).

*George G. Whitmore* for defendant.

BASSLER, J.S.C.

Plaintiff Poppy Wajda was 15 when she married defendant Anthony Wajda; he was 21. They divorced 20 years later, but immediately reconciled and continued to live together as husband and wife without remarrying for nearly ten years until they finally separated. This suit followed. The most novel of the many issues presented by this litigation is whether retirement benefits acquired during a period of cohabitation after a divorce are subject to equitable distribution under *N.J.S.A.*

2A:34–23 or some other non-statutory equitable remedy. The court makes the following findings of facts.

In 1978, at the uncontested matrimonial hearing in Monmouth County, plaintiff was represented by counsel. Defendant was indifferent to his wife's complaint for divorce, did not contest it and did not appear. The judgment awarded plaintiff custody of the four children of the marriage: Jacqueline was 19 and attending college, Steven, 17; Sandra, 14, and Christina, 7. In addition to child support of $450 a week, the court awarded weekly alimony of $225. The judgment further provided that "the plaintiff may continue to reside in the matrimonial residence to the exclusion of the defendant...."

The judgment also addressed counsel fees, responsibility for medical payments, debts and title to the station wagon. It made no mention of any pension or equitable distribution of the residence except to require defendant to remove himself in ten days. Plaintiff told the court she was not claiming an interest in her husband's pension then valued at $25,000.

What happened next is sharply disputed. Plaintiff testified that when she returned home after her court appearance and told defendant she was divorced, he said he didn't want to leave and that he would rectify his drinking problem. They "would give it another chance," as plaintiff said, and so they continued where they left off.

Defendant, on the other hand, testified that he agreed to remain home for the sake of the children and that he made it clear to plaintiff that when the youngest child, Christina, was emancipated he would leave home.

The court does not credit defendant's testimony. Defendant would have the court believe that he simply camped at the former marital residence in West Long Branch from time to time while, with plaintiff's knowledge, he continued to have relationships with other women. This plaintiff is a woman who would never have tolerated such an arrangement.

When plaintiff and defendant returned from a trip to Florida after the divorce, they told their children that they had remarried. Plaintiff continued her role as "wife," mother, housekeeper, helpmate and companion to her husband. They went out to dinner together, they vacationed together, they went to union functions together, and they continued to raise their family and to have conjugal relations until December 11, 1987. Defendant continued to be financially responsible for the maintenance of the home and the support of the family. During this period plaintiff seldom worked outside the home. The question of the divorce judgment was not discussed; it was simply ignored.

There is sufficient credible evidence for the court to conclude that after the divorce the parties reconciled. *See Brazina v. Brazina,* 233 *N.J.Super.* 145, 558 *A.*2d 69 (Ch.Div.1989). This is so even though the parties continued having "marital" disputes, with defendant absenting himself from time to time but always returning home. The court takes judicial notice of the final orders entered in 1987 and 1988 against defendant under the Prevention of Domestic Violence Act, *N.J.S.A.* 2C:25–1 *et seq.* There now remains the task of resolving the legal issues generated by the divorce, reconciliation and subsequent separation [1].

### Defendant's Retirement Benefits.

Through his membership in the International Union of Operating Engineers, defendant has a pension with a present value of $33,566 and an annuity worth $264,529 less a loan of $70,000. Plaintiff first contends that, since the judgment of divorce is silent about the distribution of the pension and annuity, this court is now free to exercise its power of equitable distribution with respect to the original divorce proceeding. This argument is without merit. The court in 1978 did not

---

[1]This published opinion discusses only the issue of plaintiff's claim to defendant's retirement benefits. The balance of the opinion is omitted.

address the issue of distributing the retirement benefits because plaintiff had waived her claim to them. The transcript of the matrimonial hearing discloses that plaintiff was aware of her husband's pension and in response to the court's inquiry was giving up any claim to it.

Plaintiff's argument that she only waived her interest in the pension but not the annuity is appealing but is not supported by the facts. The testimony sustains the conclusion that plaintiff intended not to press any claim to defendant's retirement benefits. Plaintiff may not have been aware of the distinction between defendant's pension and his annuity. It is quite clear, however, that when plaintiff used the word pension she intended defendant's entire retirement package. The pension and annuity plans were set up by Edward Broderick, plaintiff's uncle and friend of the family. Broderick was the business agent and administrator of "Pension and Welfare" of defendant's union. Plaintiff had access to, and reviewed, financial statements sent from the union. It is unrefuted that upon arriving home after the hearing plaintiff told defendant about the divorce and that she had "left [his] pension alone." Considering the large difference between the current value of the pension, $35,000, and the annuity, nearly $225,000, it is a reasonable inference that the figure of $25,000, referred to at the time of the divorce, represented the value of the annuity, not the pension. Moreover, no testimony was proffered that the waiver was based on a mistake of fact.

Plaintiff indirectly acknowledges the extent of her waiver by maintaining that the waiver was without consideration and therefore ineffectual. New Jersey is a jurisdiction that follows the rule that for a waiver to be operative it must be founded on valuable consideration. *West Jersey Title & Co. v. Industrial Trust Co.*, 27 *N.J.* 144, 153, 141 *A.*2d 782 (1958). It is difficult, however, to see the applicability of this rule where, as here, plaintiff sought and obtained the right to the use of the marital home for more than a decade (the youngest child was

seven at the time) and weekly child support and alimony payments of $675 exceeded defendant's gross income.

 Plaintiff then urges the court to equitably distribute only the value of the annuity accrued during the ten-year period of cohabitation following the divorce. Plaintiff is not entitled to equitable distribution. It is clearly the law of the State of New Jersey that "equitable distribution is awarded only in actions for divorce. *N.J.S.A.* 2A:34–23 *et seq.*" *Kozlowski v. Kozlowski,* 80 *N.J.* 378, 383, 403 *A.*2d 902 (1979).

More recently, the Appellate Division observed:

We note in passing that Crowe appears to be seeking some sort of equitable distribution as would occur in the dissolution of a marriage. That claim on its face has no place in this hybrid action, the dimensions of which have been clearly delineated by the Supreme Court. [*Crowe v. DeGioia,* 203 *N.J.Super.* 22, 37, 495 *A.*2d 889 (App.Div.1985), aff'd 102 *N.J.* 50, 505 *A.*2d 591 (1986)]

 Plaintiff then contends that it is inequitable for plaintiff not to share in defendant's retirement benefits; that while there was a *de jure* divorce, there was no *de facto* divorce. She also relies on the growing recognition of equitable claims to property acquired during cohabitation before marriage: *Raspa v. Raspa,* 207 *N.J.Super.* 371, 504 *A.*2d 683 (Ch.Div.1985) (home purchased four days before marriage in husband's own name subject to equitable distribution); *Coney v. Coney,* 207 *N.J.Super.* 63, 503 *A.*2d 912 (Ch.Div.1985) (home acquired in wife's name during period of cohabitation prior to marriage held to be acquired in contemplation of marriage and therefore subject to equitable distribution); *Rolle v. Rolle,* 219 *N.J.Super.* 528, 530 *A.*2d 847 (Ch.Div.1987) (recognizing the availability of equitable remedies to a spouse claiming assets acquired by the other spouse during cohabitation prior to marriage); *Weiss v. Weiss,* 226 *N.J.Super.* 281, 543 *A.*2d 1062 (App.Div.1988) (home purchased during six-month-engagement period a marital asset by implied contract). *Contra Mangone v. Mangone,* 202 *N.J.Super.* 505, 495 *A.*2d 469 (Ch.Div.1985).

Plaintiff also looks for support from the New Jersey cases recognizing the concept of the nonmarital "palimony" contract.

*Kozlowski v. Kozlowski,* 80 *N.J.* 378, 403 *A.*2d 902 (1979); *Crowe v. Crowe,* 90 *N.J.* 126, 447 *A.*2d 173 (1982), rev'g 179 *N.J.Super.* 36, 430 *A.*2d 251 (App.Div.1981).

Reliance on these cases is misplaced. There was no express contract whereby plaintiff agreed to live with defendant in return for defendant's promise to share with her his retirement benefits. Nor was there a contract implied in fact, *i.e.,* a contract which arises when conduct or circumstances demonstrate a mutual intention to contract. 1 *Williston, Contracts* (3 ed. Jaeger 1957), § 3. In light of her waiver in the divorce proceedings plaintiff cannot legitimately claim the court's protection of any reasonable expectations to defendant's retirement benefits. Compare Justice Pashman's dissent in *Kozlowski v. Kozlowski, supra* 80 *N.J.* at 390, 403 *A.*2d 902; *Marvin v. Marvin,* 18 *Cal.*3d 660, 134 *Cal.Rptr.* 815, 557 *P.*2d 106 (Sup.Ct. 1976).

The cases relied on by plaintiff deal with the distribution of property acquired before marriage. None address the question whether assets acquired by one "partner" during cohabitation *after* a divorce can be distributed to the other "partner" by the application of equitable principles to reach the same result as equitable distribution under *N.J.S.A.* 2A:34–23.

■ The court is being asked to effect equitable distribution under the concept of *quasi*-contract or a contract implied in law, *i.e.,* a constructive contract, which, of course, is not a contract but a formula to prevent unjust enrichment or unconscionable benefit or advantage. It is a legal fiction which rests on the equitable principle that what a person ought to do the law supposes that person to have promised to do, *St. Paul Fire, etc., Ins. Co. v. Indemnity Ins. Co. of North America,* 32 *N.J.* 17, 158 *A.*2d 825 (1960), and that a person shall not be allowed to enrich himself unjustly at the expense of another. *Callano v. Oakwood Park Homes Corp.,* 91 *N.J.Super.* 105, 219 *A.*2d 332 (App.Div.1966).

There is no question that plaintiff during the ten-year period of reconciliation contributed to the welfare of defendant in every way that a wife would have. While the funds for the pension and annuity plans came solely from defendant's labors, certainly plaintiff indirectly contributed by her assistance as a homemaker. But prior to the Divorce Reform Act a wife would not have been legally entitled to a share of her husband's pension. Her sole remedy was alimony. *Cf. Rothman v. Rothman*, 65 *N.J.* 219, 228, 320 *A.*2d 496 (1974). Despite the existence of equitable remedies of *quasi*-contract, resulting trust and constructive trust, none of these would have served to equitably allocate property acquired during the marriage. Property could be divided only by the tracing of title. *Tucker v. Tucker*, 121 *N.J.Super.* 539, 545, 298 *A.*2d 91 (Ch.Div.1972). If equitable remedies were not available to redistribute property acquired during a marriage how can they now be available to redistribute property acquired during cohabitation without marriage? Since the right to the equitable allocation of property acquired during a marriage required an act of the Legislature, there is no jurisprudential basis for a court to reallocate property acquired during cohabitation without marriage.

Equitable distribution is a right which results from a legally recognized relationship: marriage. Without that legally recognized relationship there is no right to equitable distribution, or its equivalent under equitable concepts such as *quasi*-contract, resulting trust or constructive trust. Equitable distribution is not a common law remedy; it owes its existence to the Legislature. Since its existence depends on statute, its availability as a remedy depends on statute. Consequently equitable distribution "is awarded only in actions for divorce. *N.J.S.A.* 2A:34–23 *et seq.*" *Kozlowski v. Kozlowski, supra*, 80 *N.J.* at 378, 403 *A.*2d 902.

Plaintiff urges the court to recognize her relationship as a "*de facto* marriage," and therefore, a basis for granting the relief requested. But this is just another name for a common

law marriage proscribed in New Jersey since 1939 by *N.J.S.A.* 37:1–10. *Kozlowski v. Kozlowski, supra* at 387, 403 *A.*2d 902.

This court cannot ignore the lack of any common law or equity jurisprudence in favor of plaintiff's position. A court moves beyond its proper sphere by creating a remedy of equitable distribution under some other name. If it is to be decided that the functional equivalent of marriage gives rise to a right of equitable distribution, that decision must come not from the courts but the Legislature. For a court to fashion such relief would be an unwarranted judicial foray into an area where the Legislature has extensively and decisively determined the public policy of this State. Equitable distribution is only available for distributing property acquired during marriage in an action for divorce. Since this is not an action for divorce, plaintiff has no legally cognizable claim to a share of defendant's pension and annuity.