**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 11, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP31**

Cir. Ct. No. **2020CV277**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

RANDY L. NELSON,

   PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

 V.

RANDALL G. BERG AND DEBORAH A. BERG,

   DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS.

APPEAL and CROSS-APPEAL from judgments of the circuit court for Jefferson County:  WILLIAM F. HUE, Judge.  *Affirmed*.

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Randy Nelson appeals the circuit court's judgment of eviction in favor of Randall and Deborah Berg, and he challenges the court's earlier dismissal of a portion of his complaint against the Bergs. The Bergs cross-appeal the circuit court's damages award in favor of Nelson. For the reasons explained below, we affirm.

## BACKGROUND

¶2 This case arises out of a real estate transaction between Nelson and the Bergs, who were neighbors. Nelson owned and lived on a 42-acre agricultural property that included a farmhouse and outbuildings. The Bergs offered to purchase the property in 2015, and Nelson accepted the Bergs' offer. The transaction that followed consisted of several separate documents that had been prepared by legal counsel, and that the parties executed that spring. These documents included a post-closing "occupancy agreement," which allowed Nelson to continue to occupy the farmhouse, and also an "option-to-purchase agreement," which gave Nelson a two-year option to repurchase the farmhouse and four acres under specified terms, including payment of a $50,000 purchase price.

¶3 The dispute that is the subject of this appeal arose in 2020. At that time, the Bergs sent Nelson a letter that purported to "non-renew" what they characterized as Nelson's "lease" on the farmhouse. Nelson filed suit against the Bergs seeking various forms of relief. In his complaint, which we describe in greater detail below, Nelson took the position that he continued to have an option to purchase the farmhouse and four acres, and that he had almost finished paying the purchase price. Resolution of this dispute hinges on the various documents comprising the 2015 transaction and the complaint's allegations about the actions

the parties took after they executed those documents, as alleged in Nelson's complaint, both of which we now describe in some detail.

¶4    We begin with the farm offer to purchase agreement (the "offer"). Randall Berg executed the offer on March 6, 2015, and Nelson accepted it. Pursuant to the offer's terms, the sale was to close in March, but the parties later amended the offer by adding Deborah Berg as a buyer and moving the closing date to April 10.  At closing, the parties executed the two agreements mentioned above: the occupancy agreement and the option-to-purchase agreement.

¶5    The occupancy agreement granted Nelson the right to occupy the farmhouse and surrounding acreage for two years following the closing.  Under its terms, Nelson agreed to pay the Bergs $500 a month, and he was responsible for all repairs and maintenance of the premises.  The occupancy agreement specified that it was not creating a landlord-tenant relationship and was not subject to the provisions of the Wisconsin statutes and administrative code that govern such relationships.

¶6    Turning to the option-to-purchase agreement, as mentioned above, that agreement gave Nelson an option to repurchase the farmhouse and four surrounding acres for $50,000.  Pursuant to its terms, Nelson had to exercise the option in writing no later than April 10, 2017:  "This Option may only be exercised if [Nelson] delivers written notice to [the Bergs] no later than midnight April 10, 2017 unless extended below."  The parties struck language from the form agreement that would have allowed Nelson to extend the initial option term by paying a specified sum.  The option-to-purchase agreement also specified that the buy-back transaction "is to be closed no later than April 10, 2017 … unless

otherwise agreed by the Parties in writing," and that "'Time is of the Essence'" as to the deadlines for exercising the option and closing the buy-back transaction.

¶7 The option-to-purchase agreement cross-referenced the occupancy agreement which, as explained above, provided that Nelson would pay the Bergs $500 each month to occupy the premises. The parties struck language from the form option-to-purchase agreement that would have credited these occupancy payments towards the $50,000 purchase price. Specifically, the stricken language provided: "In the event that this Option is timely exercised, $___ of each monthly rent payment of $___ shall be applied to the purchase price while the balance shall be deemed solely rent that is retained by the seller." (Quoted text stricken in original.)

¶8 The option-to-purchase agreement also contained a merger clause, which provided that the written agreement "contains the entire agreement … regarding the transaction. All prior negotiations and discussions have been merged into this Option."

¶9 The closing took place as scheduled on April 10, 2015. Then, less than one month later, the parties signed a standard form lease agreement (the "lease") that conflicted in some ways with the post-closing occupancy agreement. According to its terms, the lease would run until April 30, 2016, and Nelson would pay the Bergs $500 in rent each month to occupy the farmhouse.[1] The lease did not specifically reference the occupancy agreement and, unlike the occupancy

---

[1] The parties added a handwritten provision to the lease that provided: "If full rent is more than 29 days late, offer to purchase the home and buildings with 4 surrounding acres is void. Note: Offer to Purchase expires 4-2017."

agreement, the lease did not provide that Nelson was responsible for all repairs and maintenance of the premises.

¶10 One year later on May 1, 2016, the parties signed a lease renewal agreement. The renewal agreement incorporated the terms of the prior lease, except that it would expire on April 30, 2017.

¶11 During the two-year term of the option-to-purchase agreement, Nelson made timely payments each month to the Bergs. The option granted by the written option-to-purchase agreement expired on April 10, 2017. It is undisputed that Nelson did not exercise his option, and that the parties did not execute any written extension of the option. It is also undisputed that the lease renewal expired on April 30, 2017, and the parties did not execute another lease renewal or any other document to govern their relationship.

¶12 Between 2017 and 2020, Nelson continued to live in the farmhouse, occupy the four surrounding acres, and make monthly payments to the Bergs. The Bergs increased his monthly payments from $500 to $600, and then to $700.

¶13 The Bergs sent the "notice of non-renewal" to Nelson on July 15, 2020. According to the notice, the "[o]riginal written lease ended on April 30, 2017" and the parties "mutually agreed … to a verbal month to month lease going forward." The notice provided that, effective August 31, 2020, the Bergs would not be renewing Nelson's lease, and it directed Nelson to vacate the farmhouse by that date.

¶14 Nelson filed a complaint, which he subsequently amended. His allegations are difficult to parse, but it appears that Nelson is alleging that he retains an option to purchase the farmhouse and surrounding four acres pursuant to

his written and oral agreements with the Bergs. He alleges that the transaction documents summarized above contain some but not all of the agreements between the parties, and that the parties agreed to other terms that do not appear in the transaction documents, including some terms that are directly contrary to the express terms of the transaction documents. Nelson appears to be alleging that, at some point, he and the Bergs agreed that his monthly payments would be credited as "principal" towards the option-to-purchase price. He also appears to allege that, sometime in 2017, he and the Bergs orally agreed to extend the option deadline until he had paid off the $50,000 purchase price in full.[2] In his subsequent court filings, Nelson acknowledged that he had not yet fully satisfied the purchase price, but he indicated that "the unpaid principal is now $2,500."

¶15 As best as we understand it, Nelson's complaint asked the circuit court for specific performance of the parties' alleged oral agreements pursuant to WIS. STAT. § 706.04 (2021-22).[3] That statute allows a court to equitably enforce some land transactions that do not satisfy all of the requirements of the statute of frauds. Alternatively, Nelson's complaint seeks damages in the amount of his

---

[2] Nelson later submitted a brief to the circuit court that contained additional factual assertions that were not expressly alleged in his complaint. More specifically, Nelson's brief asserted that Nelson approached Randall Berg in early 2017 to discuss an extension of his April 10, 2017 deadline to exercise the option. Berg told Nelson that he could simply continue making the regular monthly payments. Nelson suggested that they have an attorney prepare a written option extension. Berg disagreed, describing the cost of retaining an attorney as unnecessary and something to be avoided.

These factual assertions are not properly considered on a motion to dismiss because they were not included in Nelson's complaint. However, our decision affirming the dismissal of the claim would be no different even if Nelson had amended his complaint to include these allegations.

[3] All references to the Wisconsin Statutes are to the 2021-22 version.

monthly payments to the Bergs, either under a breach of contract theory or an unjust enrichment theory.

¶16    The Bergs answered Nelson's complaint and counterclaimed for a writ of eviction.  They then filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted under WIS. STAT. § 802.06.  The Bergs attached the transaction documents to their motion, and they argued that Nelson's option to purchase expired in 2017; the Bergs had not verbally agreed to extend it; the parties had not agreed to credit Nelson's monthly payments towards the option-to-purchase price; and, following the expiration of the lease, Nelson's occupancy of the premises was converted into a month-to-month tenancy.

¶17    In a written decision, the circuit court granted the motion to dismiss in part.  The court determined that Nelson's complaint failed to state a claim under WIS. STAT. § 706.04 for enforcement of the alleged oral agreements regarding the option to purchase.  The court further determined that the complaint failed to state a claim for damages under a breach of contract theory because Nelson's option to purchase the farmhouse and surrounding acreage had expired, the alleged oral agreements were unenforceable, and Nelson did not identify any other contract term that the Bergs had breached.  However, the court determined that the complaint stated a claim for unjust enrichment, and that claim proceeded to a bench trial.

¶18    At the outset of the trial, the circuit court asked Nelson's counsel to identify the nature of his unjust enrichment theory, given the court's earlier ruling that the alleged oral agreement to extend the option to purchase was unenforceable.  Following a lengthy exchange, Nelson's counsel stated that the only theory of unjust enrichment that survived the court's ruling was Nelson's

claim that he had provided various services, including repairs, for the Bergs over the years by which they had been unjustly enriched.

¶19    Nelson and Randall Berg both testified at the trial.  Nelson testified that he had performed various services for the Bergs over the course of several years, and a list of these services was introduced into evidence.  At the conclusion of the trial, the circuit court determined that Nelson was entitled to compensation for some but not all of the services.  The court awarded $7,777.50 in damages to Nelson, and it also issued a writ of eviction in favor of the Bergs.  We discuss the evidence regarding Nelson's damages and details of the circuit court's decision at greater length below when we address the Bergs' cross-appeal.

## DISCUSSION

¶20    Nelson's appeal challenges the circuit court's dismissal of his claims regarding the option-to-purchase agreement, and the Bergs' cross-appeal challenges the sufficiency of the evidence presented to support the court's damages award.[4]  We address the appeal and the cross-appeal in turn.

## I.  Nelson's Appeal

¶21    A motion to dismiss for failure to state a claim tests the sufficiency of the complaint.  *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693.  In reviewing a circuit court order granting a motion to dismiss, we liberally construe the pleadings, and we accept as true the

---

[4] Nelson asks us to strike the Bergs' response and cross-appellants brief as untimely.  We decline to do so.  Although the Bergs did not file their brief within the deadline set forth in WIS. STAT. RULE § 809.19(6), this court extended that deadline by order dated June 14, 2022, and the Bergs filed their brief before the extended deadline elapsed.

facts alleged in the complaint and all reasonable inferences from those facts. *Heinritz v. Lawrence Univ.*, 194 Wis. 2d 606, 610-11, 535 N.W.2d 81 (Ct. App. 1995). In addition to the allegations in the complaint, we "may consider a document attached to the motion to dismiss … without converting the motion into one for summary judgment, if the document was referred to in the plaintiff's complaint, is central to [the plaintiff's] claim, and its authenticity has not been disputed." *Soderlund v. Zibolski*, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561. Whether a complaint states a claim is a question of law that we decide de novo, although we benefit from the circuit court's analysis. *Data Key Partners*, 356 Wis. 2d 665, ¶17.

¶22 As discussed, Nelson's complaint alleges that he continues to have an enforceable option to purchase the farmhouse and surrounding acreage from the Bergs. He alleges that his option did not actually expire on April 10, 2017, as the written option agreement expressly states, because the parties orally agreed to extend that deadline. Nelson contends that the circuit court erred by not accepting his allegations about this oral agreement as true, and that the court's dismissal order must be reversed on that basis alone.

¶23 Contrary to Nelson's assertion, the circuit court accepted all of his factual allegations as true when it ruled on the motion to dismiss. The court's determination that Nelson failed to state a claim was based on a legal conclusion that, even if the parties orally agreed to extend Nelson's option to purchase, that oral agreement was legally ineffective to modify the unambiguous terms of the written option to purchase. When considering whether a plaintiff's allegations state a claim, a court is not required to assume that the legal conclusions pled by a plaintiff are true, and bare conclusions of law "[do] not fulfill a plaintiff's duty of stating the elements of a claim in general terms." *Doe v. Archdiocese of*

*Milwaukee*, 2005 WI 123, ¶36, 284 Wis. 2d 307, 700 N.W.2d 180 (citation omitted).

¶24    In any event, we independently review whether Nelson's complaint states a claim, and we may affirm the circuit court's dismissal for reasons the court did not consider. *Anderson v. Regents of Univ. of Cal.*, 203 Wis. 2d 469, 480, 554 N.W.2d 509 (Ct. App. 1996). Like the circuit court, we conclude that the complaint fails to state a claim.

¶25    We begin with the written option-to-purchase agreement, which plainly does not allow Nelson to exercise his option to purchase the farmhouse and surrounding acreage at this late date. According to its unambiguous terms, Nelson was required to exercise the option in writing no later than April 10, 2017, the transaction was required to close that same day, and any agreement to extend the closing date had to be in writing. Nelson acknowledges that he did not exercise his option and close the transaction by April 10, 2017, and that the parties did not extend those deadlines in writing, and, therefore, under the terms of the agreement, the option has expired.

¶26    Nelson's complaint seeks reformation of the written option-to-purchase agreement based on the parties' oral agreements. For purposes of considering the Bergs' motion to dismiss, we assume that the allegations in the complaint are true—that the parties orally agreed that, contrary to the written agreement, Nelson's monthly payments would be credited towards the purchase price, and he would retain an option to purchase until he paid off the $50,000 purchase price in full. Even assuming that the parties did orally agree to these two terms, Nelson's complaint fails to state a claim.

¶27    To the extent Nelson is alleging that the parties actually agreed to different terms *before* they executed the option-to-purchase agreement, Nelson fails to state a claim for reformation of the option-to-purchase agreement. The agreement contains an unambiguous merger clause, which states that the written agreement embodies the entire agreement between the parties. "When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake." ***Town Bank v. City Real Estate Dev., LLC***, 2010 WI 134, ¶36, 330 Wis. 2d 340, 793 N.W.2d 476 (citation omitted). Nelson's complaint does not allege fraud, duress, or mutual mistake and, therefore, Nelson cannot rely on extrinsic evidence of a prior oral agreement to vary or contradict the terms of the option-to-purchase agreement. ***Id.***

¶28    To the extent Nelson's complaint alleges that the parties orally agreed to modify terms in the option-to-purchase agreement *after* they had executed it, Nelson's complaint also fails to state a claim. As noted, the agreement provides that any extension of the April 10, 2017 deadline to execute the option and close the buy-back transaction must be in writing. Nelson cites to WIS. STAT. § 706.04, which allows courts to equitably enforce defective conveyances, including oral land transactions, under certain circumstances.[5] *See*

---

[5] WISCONSIN STAT. § 706.04 provides:

> A transaction which does not satisfy one or more of the requirements of [the statute of frauds, WIS. STAT. §] 706.02 may be enforceable in whole or in part under doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:

(continued)

11

*Nelson v. Albrechtson*, 93 Wis. 2d 552, 556, 287 N.W.2d 811 (1980) (stating that § 706.04 sets forth requirements that must be satisfied for a real estate transaction not evidenced by a valid writing to be enforced); *Krauza v. Mauritz*, 78 Wis. 2d 276, 279, 254 N.W.2d 251 (1977) (enforcing an entirely oral buy-back agreement under § 706.04 under circumstances in which the buyer proved the definite material terms of the agreement and the sellers were equitably estopped from asserting the statute of frauds). However, Nelson cites no authority to support the proposition that parties can orally agree to extend a deadline in a written agreement regarding the purchase of real estate if the written agreement itself unambiguously provides that any extension must be in writing. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments that are unsupported by citations to legal authority). For all these reasons, we conclude that Nelson has not stated a claim for reformation of the option-to-purchase agreement, or for specific performance of the reformed agreement.

¶29    Nelson's claim for damages based on a breach-of-contract theory likewise fails to state a claim. Nelson has not identified any breach of the terms of the written option-to-purchase agreement, he has not shown that the alleged oral

---

(1) The deficiency of the conveyance may be supplied by reformation in equity; or

(2) The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied; or

(3) The party against whom enforcement is sought is equitably estopped from asserting the deficiency. ….

agreements were enforceable, and he has not identified any other contract provision that the Bergs breached.

¶30 Finally, in his opening appellate brief, Nelson asserts that a judgment of eviction should not have been entered "because this case is not a simple landlord tenant case" and is instead "an option to purchase case." This argument rests on a legal argument that we have rejected—that Nelson retains an option to purchase the farmhouse and surrounding acreage.[6]

## II. The Cross-Appeal

¶31 The Bergs contend that the trial evidence was insufficient to support the damages award in Nelson's favor. We reject the Bergs' arguments.

¶32 As mentioned above, following a bench trial, the circuit court determined that Nelson was entitled to a total of $7,777.50 in damages related to various services he performed for the Bergs over the years. The Bergs' appellate briefing mischaracterizes the entire award as unjust enrichment damages, but that is inaccurate, and this mischaracterization of the award makes a difference in our analysis of the Bergs' arguments. We therefore briefly recount the evidence and the circuit court's determinations about the damages to which Nelson is entitled.

¶33 Nelson testified that he performed numerous services for the Bergs for which he was not compensated, and a list of 42 of these services and Nelson's

---

[6] In his reply brief, Nelson asks us to modify the circuit court's damages award and award him additional damages, beyond what the circuit court ordered. We will not address arguments raised for the first time in a reply brief. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("It is inherently unfair for an appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party.").

approximation of their value was entered into evidence. At the end of the trial, the circuit court went through this list item by item. It determined that Nelson was entitled to damages for some of the services on the list but not for others, and the court's damages award fell into two separate categories: $3,385.00 in rent abatement and $3,392.50 for unjust enrichment. We address these categories in turn.

¶34 As for the rent abatement damages, the circuit court determined that, although the parties' post-closing occupancy agreement specified that Nelson was not a tenant and was not occupying the premises pursuant to a lease, the parties subsequently signed a lease agreement and a lease renewal; therefore, Nelson's occupancy was governed by the written terms of the lease and lease renewal agreements and Wisconsin law on landlord-tenant relationships. The court further determined that some but not all of the repairs and upgrades that Nelson made to the farmhouse had been the landlord's responsibility under the lease and Wisconsin law—specifically, the well pump, the doors and locks, the windows, the roof, the water heater, the toilets, the workshop door, the floors, and sewer work. The court determined that Nelson was entitled to statutory damages in the form of rent abatement in the amount of $3,385.00. The court specifically explained that it was "making that award [of $3,385.00] statutorily. That's not under unjust enrichment."

¶35 To the extent that the Bergs argue that the circuit court erroneously awarded Nelson damages related to these specific repairs and upgrades, the Bergs fail to grapple with the reasoning underlying the award. They assert in passing that "there was no evidence presented that these items were essential for the tena[nta]bility of the premises," but this brief reference falls far short of a developed argument. The Bergs do not cite to WIS. STAT. § 704.07(4), which is

the source of Wisconsin law on rent abatement, nor do the Bergs cite any case law addressing the respective obligations of landlords and tenants, when rent abatement is appropriate, or the amount of abatement that should be ordered in a given situation. Instead, the Bergs' arguments rely primarily on principles of unjust enrichment law, even though the court unequivocally stated that unjust enrichment was not the basis for this part of the award.[7] By failing to address the grounds upon which the court ruled, the Bergs have conceded the validity of the award of these statutory damages. *See West Capitol, Inc. v. Village of Sister Bay*, 2014 WI App 52, ¶49, 354 Wis. 2d 130, 848 N.W.2d 875 ("Failure to address the grounds upon which the circuit court ruled constitutes a concession of the ruling's validity.").

¶36 We now turn to the portion of the damages award that was based on unjust enrichment. A circuit court's decision to grant equitable relief in an action for unjust enrichment is discretionary, *Watts v. Watts*, 137 Wis. 2d 506, 530-34, 405 N.W.2d 303 (1987), and we will sustain it if the circuit court "examined the relevant facts, applied a proper standard of law, and, using a rational process, reached a conclusion that a reasonable judge could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶37 Here, the circuit court awarded Nelson a total of $3,392.50 in damages for unjust enrichment. The court found that Nelson performed the following services for which the Bergs had been unjustly enriched: Nelson did

---

[7] For example, the Bergs assert that there was no evidence that they were aware of the various repairs and upgrades that Nelson made to the farmhouse; that there was no evidence that the Bergs viewed these repairs and upgrades as a benefit conferred upon them; and that the damages award for these items is inconsistent with the measure of damages for unjust enrichment.

field work for the Bergs; he fixed their hay wagon and the bearings on their skid loader; he replaced the doors in their pole shed; he fixed the Bergs' tractor, their combine, and their silo; he fixed their tires; he repaired one of the barn walls; he removed rocks from one of the Bergs' fields; he helped dehorn their cattle; and he did landscaping at a rental house owned by the Bergs. The court considered the parties' disputes about the amount of damages that should be awarded for each of these services, and it determined the reasonable value of these services to the Bergs. After the court added up the total damages, it asked: "The next question is if I've missed anything, is there some call that I have to make on something I haven't addressed here?" The Bergs' attorney responded: "With regard to these claims, no."

¶38  On appeal, the Bergs contend that the trial evidence was insufficient to satisfy some of the elements of unjust enrichment for some of these services (or perhaps for all of the services—the Bergs do not specify). The essential elements of unjust enrichment are: (1) that Nelson conferred a benefit upon the Bergs; (2) appreciation or knowledge of the benefit by the Bergs; and (3) that the Bergs accepted or retained the benefit under circumstances making it inequitable for the Bergs to retain the benefit without payment of its value. *Buckett v. Jante*, 2009 WI App 55, ¶10, 316 Wis. 2d 804, 767 N.W.2d 376 (citing *S & M Rotogravure Serv., Inc. v. Baer*, 77 Wis. 2d 454, 460, 252 N.W.2d 913 (1977)).

¶39  The Bergs argue that Nelson's testimony about at least some of the services was insufficient to establish when the Bergs learned of the benefits that Nelson conferred upon them, and that evidence on that topic was "critical, because [Randall] Berg had no opportunity to reject or accept such benefits unless he knew they were a benefit made to him." The Bergs' appellate briefing identifies a number of services for which, they contend, the evidence is lacking in this regard:

16

"the well pump, the windows, the barn wall, doors, flooring, repairs, new toilets, and more."[8] However, as we have explained, the circuit court awarded rent abatement, not unjust enrichment damages, for almost all of the services identified in this list. There is only one service identified in this list for which the court awarded unjust enrichment damages—the court awarded Nelson $200 in unjust enrichment damages for the barn wall repair.

¶40 The trial evidence was sufficient to satisfy Nelson's burden to prove that the Bergs were unjustly enriched by his repair of the barn wall. Nelson testified that, approximately "five years ago," Randall Berg told Nelson to fix the wall or Berg would have to "bulldoze it down," that Nelson fixed the wall, and that Berg was aware of the work that Nelson did to fix the wall. From this testimony, the circuit court could have found that the Bergs had knowledge and appreciation of the benefit, and that they accepted and retained the benefit of the barn wall repair under circumstances such that it would be inequitable to retain the benefit without payment or value thereof.[9]

¶41 The Bergs also contend that Nelson's evidence was insufficient to support the unjust enrichment damages award. The measure of damages is the value of the "benefit conferred upon the defendant, not [the value of] the

---

[8] The Bergs also argue that there was no evidence that it was inequitable for the Bergs to retain the benefit of those services without paying for them. They argue that "there was no injustice here" because Nelson "conferred these benefits with the hope of repurchasing the premises." We reject this argument because it was for the circuit court to assess the equities of the situation, and the court did not erroneously exercise its discretion. But in any event, the Bergs do not persuade us that the equities favor them.

[9] As for any argument that the Bergs intend to make about the other services for which Nelson received unjust enrichment damages, we reject it as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (declining to address undeveloped arguments).

plaintiff's loss." ***Management Computer Servs., Inc. v. Hawkins, Ashe, Baptie & Co.***, 206 Wis. 2d 158, 188, 557 N.W.2d 67 (1996). Unjust enrichment "damages must be proven with reasonable certainty," but do not require "mathematical precision." ***Id.*** at 189. We now consider and reject each of the Bergs' arguments.

¶42 The Bergs argue that Nelson did not prove his damages with a reasonable degree of certainty. They assert that Nelson merely ball-parked the value and "rounded up to the nearest hundred dollars without providing any basis for how he came up with that amount," and that this methodology was inadequate. We disagree. Nelson testified that his estimates were based on the cost of parts and the cost of his own labor multiplied by the number of hours he expended. As to the Bergs' argument that Nelson's estimates lacked precision, the Bergs concede that mathematical precision is not required, and instead, "evidence of damages is sufficient if it enables the jury to make a fair and reasonable approximation." ***Id.*** (internal citation omitted). We conclude that Nelson's testimony provided sufficient credible evidence on the value of his services and repairs to sustain the circuit court's unjust enrichment damages determination.

¶43 The Bergs also assert that the Nelson's evidence was insufficient because estimates of the cost of materials and labor do not account for the actual value of the benefit to the Bergs. We reject this argument for two reasons. First, we see no reason why the value of the benefit conferred upon the Bergs could not be determined by calculating how much they would have paid to have another person perform those services. Second, the Bergs forfeited this argument by not raising it in the circuit court. At trial, the court gave the Bergs the opportunity to dispute the value of each service Nelson testified that he performed, and the Bergs never disputed the validity of Nelson's valuation methodology. Nor did the Bergs raise any such issue in their closing argument, or in any post-verdict brief. When

a party fails to raise an issue before the circuit court, the party generally forfeits that argument on appeal. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177. The forfeiture rule is especially warranted in a situation like this, in which Nelson would have had the opportunity to present additional factual evidence or arguments had the Bergs raised this argument in the circuit court. *See Gruber v. Village of N. Fond du Lac*, 2003 WI App 217, ¶27, 267 Wis. 2d 368, 671 N.W.2d 69.

¶44 Finally, the Bergs claim that Nelson failed to present any evidence of the "post-installation depreciation" of any improvements that he made. To the extent that the Bergs are arguing that they are entitled to an offset because the value of the work Nelson performed has diminished over time, they cite no authority to support the proposition that restitution is measured at the time of trial, as opposed to the time the benefit is conferred. *See Pettit*, 171 Wis. 2d at 647 (declining to address undeveloped arguments).

## CONCLUSION

¶45 For the forgoing reasons, we affirm the judgments of the circuit court. No costs awarded to any party.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

19